UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| JENNIFER DOLD, personal representative of the estate of Alexander Dold; and KATHY DUNCAN, mother of Alexander Dold,<br><br>Plaintiffs,<br><br>v.<br><br>SNOHOMISH COUNTY, a political subdivision of the State of Washington; BRYSON McGEE; and CODY McCOY,<br><br>Defendants. | NO.<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

## I.  PARTIES

1. Jennifer Dold is the sister of Alexander Dold, who died intestate, and the personal representative of the Estate of Alexander Dold. She is a resident of Snohomish County, Washington.

2. Kathy Duncan, the mother of the deceased Alexander Dold, is a resident of Snohomish County, Washington.

3. Snohomish County is a municipal corporation, a political subdivision of the State of Washington, and at all times relevant to this case was the employer of deputy sheriffs Bryson McGee and Cody McCoy.

4. Bryson McGee was, at all times material to this lawsuit, employed as a deputy sheriff for Snohomish County.

COMPLAINT AND DEMAND FOR JURY TRIAL – 1
(CASE NO. _____)

DOL013-0001 6068800

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

5. Cody McCoy was, at all times material to this lawsuit, employed as a deputy sheriff for Snohomish County.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. § 1343(3), § 1367, and 42 U.S.C. §1983. This Court also has supplemental jurisdiction over the state law claims which arise out of the same nucleus of facts as the claims brought pursuant to federal statute.

7. All claims arose in the Western District of Washington. On information and belief defendant McCoy resides in Western Washington, defendant McGee did reside in Western Washington when the events giving rise to this lawsuit took place, and Snohomish County lies within Western Washington. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

## III. OPERATIVE FACTS

8. On March 21, 2017, Alexander Dold, age 29, was living with his mother Kathy Duncan, at 12014 221st Street SE, Snohomish, Washington.

9. Around 5:30 p.m., Dold got into an argument with his mother Kathy Duncan.

10. Alexander Dold wanted his mother to give him some money.

11. Duncan was in the habit of accessing the money that Alex Dold received each month as Social Security Disability Income ("SSDI") and giving it to him.

12. Duncan would regularly give Dold $30 or $35 each day, but no more because if she gave him more he would run out of money before the end of the month and the receipt of his next SSDI benefit check.

13. Duncan had already given Dold money that day and told him she could not give him anymore.

14. Dold got upset and insisted that Duncan transfer more money to his account.

COMPLAINT AND DEMAND FOR JURY TRIAL – 2
(CASE NO. _____)

DOL013-0001 6068800

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

15. Dold tried to take Duncan's cell phone from her and Duncan struggled with him to retain it.
16. During their struggle for Duncan's phone the chair Duncan was sitting on was flipped over.
17. After this altercation Dold left the house.
18. Duncan contacted her daughter Vanessa Dold and told her what had happened.
19. Around 7 p.m. Vanessa Dold texted her sister Jennifer Dold and told Jennifer that "Alex attacked mom over transferring money, she's calling the cops."
20. Jennifer Dold then telephoned her mother Kathy Duncan and her mother told her what had happened between her and Alexander Dold.
21. Jennifer telephoned and spoke to a Mental Health Professional (MHP) at the Snohomish County Department of Mental Health.
22. Jennifer asked the Department to send a MHP to her mother's house to evaluate Dold but the Department declined saying that Dold was not violent enough to warrant that.
23. Jennifer Dold then called a friend of hers who was a police officer. Her friend advised her to call 911.
24. Dold relayed this advice to her mother.
25. Although hesitant to do so, Duncan decided to call 911.
26. However, Duncan waited for Dold to come back home before calling 911.
27. Dold was away from the house for more than three hours but eventually he came back to the house around 8:45 p.m.
28. When Dold came back to the house he was calm.
29. Dold then left the house for a second time but came back shortly.
30. After Dold returned the second time, Duncan left the house and went to make a 911 call.

COMPLAINT AND DEMAND FOR JURY TRIAL – 3
(CASE NO. _____)

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6068800

31. At 9:18 p.m., Kathy Duncan called the SNOPAC 911 dispatch center. Her call was taken by Dana A. Davies.

32. Duncan told Davies that her son, Alexander Dold, had schizophrenia and had not taken his medicine since November or December.

33. Duncan told Davies that her son broke the lanyard around her neck, then tried to take her phone from her.

34. Davies asked if any weapons were involved and Duncan said no.

35. At 9:18 and 9:19 p.m., the Snohomish County Sheriff's Office dispatched deputies Bryson McGee and Cody McCoy to go to the residence of Kathy Duncan.

36. Duncan told Davies that her son was afraid of the police because a high school friend of his had been killed by a police officer.

37. Duncan told Davies she did not want police to have their sirens activated when they came to the house.

38. Duncan told Davies that her son had to go to the hospital.

39. Duncan told Davies that her son had never hit her before.

40. Duncan told Davies that her son was 29 years old.

41. Duncan told Davies that her son had twice been hospitalized for schizophrenia.

42. At 9:19 p.m. 911 operator Davies broadcast over police dispatch radio that "the suspect," Alexander Dold, "is mental and off meds" and that the reporting party had requested a silent approach go the house.

43. Deputy McGee acknowledged hearing that call.

44. Davies asked Duncan if she was injured and if she needed an aid car.

45. Duncan replied she was not injured and did not need an aid car.

46. Duncan told Davies that her son did not need an aid car and that no one needed an aid car.

COMPLAINT AND DEMAND FOR JURY TRIAL – 4
(CASE NO. _____)

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6068800

47. Duncan told Davies that after the incident her son left the house and then came back to the house and she acted like nothing had happened.

48. Dold left the house again (a second time) and then came back again.

49. Duncan told Davies that she then left the house telling her son that she'd be back in a little bit.

50. At 9:21 p.m. Davies advised the responding deputies that the suspect – Dold – lived in the same house as the reporting party (Duncan) and that the reporting party thought Dold would take off if he knew she had called 911.

51. Duncan told Davies that she was making her telephone call from "the store."

52. Duncan told Davies that she was going to go back to her house.

53. Duncan told Davies that when she got back home she was going to act like nothing was going on and that her son would not know that she had called 911 and that police were coming to the house.

54. Duncan told Davies that she was requesting that an officer take her son to the psychiatric ward of the hospital so he could be evaluated.

55. At 9:25 p.m. 911 operator Davies advised the responding deputies that Duncan wanted her son taken in for a psychiatric evaluation.

56. Duncan told Davies "he's calm now."

57. Duncan told Davies that she left the house in order to make her 911 call.

58. Duncan gave Davies her cell phone number when the operator requested it.

59. Davies told Duncan that he had advised deputies to contact her back at her house stating, "I've advised 'em to contact you there in person 'cause that's what you wanted."

60. Davies told Duncan to call back "if anything changes," Duncan said she would, and then that 911 call ended.

COMPLAINT AND DEMAND FOR JURY TRIAL – 5
(CASE NO. _____)

DOL013-0001 6068800

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

61. At 9:47 p.m. sheriff's deputies Bryson McGee and Cody McCoy advised police radio that they had arrived at the Duncan/Dold residence and were now "on scene."
62. McGee and McCoy came to the front door of Duncan's residence. They heard no sounds coming from inside the house.
63. There was no sign or indication that anyone was in danger.
64. Duncan and Dold were watching TV at the time the deputies approached the door.
65. Deputy McGee knocked on the door.
66. Alexander Dold looked out the window and saw people he didn't know standing outside and that freaked him out.
67. Alexander Dold came to the door and opened it.
68. McGee said to Dold, "Where's your mom?"
69. Dold pointed to his mother who was standing by him.
70. Duncan said, "I'm right here."
71. McGee said to Dold that he wanted to come into the house so he could talk to Dold's mother.
72. Dold replied, "I don't want to talk about it right now."
73. Dold started to close the door.
74. Deputy McGee prevented Dold from closing the door by blocking the door with his foot and by pushing against it.
75. Deputy McGee kept pushing and forced his way into the house.
76. Deputy McCoy also entered the home.
77. No one was in danger when the deputies entered.
78. Duncan was barely able to get out of the way when McGee entered.
79. Dold ran into Duncan's bedroom.
80. McGee and McCoy pursued Dold into the bedroom.
81. McGee and McCoy found Dold lying on his back on his mother's bed.

COMPLAINT AND DEMAND FOR JURY TRIAL – 6
(CASE NO. _____)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6068800

82. Dold had both his hands and his legs up in the air while lying on his back.

83. As they struggled, Dold fell off the bed onto the floor.

84. Deputy McGee applied a chokehold to Dold and attempted to overcome Dold's resistance to being handcuffed by choking him (applying a Lateral Vascular Neck restraint, or "LVNR").

85. McGee's intent was to render Dold unconscious so that he could take Dold into custody.

86. Dold was able to walk out of the bedroom and back into the living room with McGee clinging to his back and continuing to apply a chokehold to Dold.

87. When Dold got to the door to the house, McGee considered shooting Dold with his gun, but decided not to do that.

88. Dold went out the door to the house with McGee holding onto him and continuing to apply a chokehold.

89. As McGee and Dold went through the door, Dold became unconscious and went limp.

90. McCoy followed McGee and Dold out of the house.

91. Deputies McGee and McCoy got Dold down on the porch that was right outside the front door.

92. While on the porch the deputies tried to handcuff him.

93. One of the deputies said to Dold, "I could shoot you."

94. During their struggle Dold yelled for his mother to help him.

95. During his struggle with McGee and McCoy Dold yelled that he was submitting.

96. Deputies McGee and McCoy punched, kicked and struck Dold with a baton.

97. One of the deputies told Dold, "if you keep resisting we're gonna break your fucking fingers."

COMPLAINT AND DEMAND FOR JURY TRIAL – 7
(CASE NO. _____)

DOL013-0001 6068800

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

98. While McCoy tried to handcuff Dold, McGee continued to apply a chokehold.

99. While lying on the porch Dold briefly recovered consciousness once.

100. McGee resumed applying a chokehold in order to choke him into unconsciousness again.

101. At 9:53 p.m., deputy McCoy advised police radio that there had been a taser deployment.

102. At 9:54 p.m. deputy McGee told police radio "we're going to need more units out here."

103. During the struggle between the deputies and Dold, Kathy Duncan telephoned her daughter Jennifer Dold and told Jennifer that the deputies were wrestling with Alexander and tasing him.

104. During the struggle Duncan told the deputies, "Please don't hurt him, he's schizophrenic; he doesn't understand what you're saying."

105. During the struggle between law enforcement officers and Dold, McCoy tased Dold with his taser three times.

106. McCoy discharged his taser at 9:52:21 p.m.

107. McCoy discharged his taser a second time at 9:53:48 p.m.

108. McCoy discharged his taser a third time at 9:53:54 p.m.

109. At 9:57 p.m. one of Duncan's neighbors, Annette Blanco, called SNOPAC 911 and told 911 operator Myranda Sawyer that she was hearing a lot of screaming coming from inside Duncan's house.

110. Blanco told Sawyer that she heard someone say, "Show your hands."

111. At 10:00 p.m. deputy McGee advised police radio "We need some units now."

112. At 10:01 p.m. Monroe Police Officers Van Eaton and Block arrived at the Duncan residence.

COMPLAINT AND DEMAND FOR JURY TRIAL – 8
(CASE NO. _____)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6068800

113. During the struggle between law enforcement officers and Dold, McGee tased Dold with his taser three times.

114. McGee discharged his taser at 10:05:40 p.m.

115. McGee discharged his taser a second time at 10:05:52 p.m.

116. McGee discharged his taser a third time at 10:06:11 p.m.

117. When he arrived Officer Block observed that Dold was lying face down on the porch steps with his left arm under his body.

118. Officer Block tried to remove Dold's left arm from underneath his body and he kicked Dold in the back two times to try to achieve that goal.

119. Neighbor Jason Padvorac approached the Duncan house and saw the officers struggling with Dold. One of the officers told Padvorac to leave and he did.

120. After Sgt. Dan Johnson arrived on the scene he assisted deputies McGee and McCoy in their attempt to handcuff Dold. Johnson kicked Dold two or three times.

121. Johnson used his taser by deploying it in the drive stun mode in the lower left area of Dold's back.

122. Deputy Miner tried to assist in the handcuffing. He punched Dold in the back two times.

123. Deputy Miner was about to punch Dold a third time when Miner accidentally injured himself by striking his elbow against the bannister of the porch stairs.

124. With the assistance of other officers, while Dold lay on the front porch the deputies succeeded in handcuffing Dold.

125. The officers moved Dold from the porch down a short set of stairs to the ground in front of the house.

126. Sgt. Johnson then placed a hobble restraint on Dold's feet.

COMPLAINT AND DEMAND FOR JURY TRIAL – 9
(CASE NO. _____)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6068800

127. Officer Van Eaton noticed that Dold was not responding to verbal commands or to physical prompts and was unconscious.

128. Officer Van Eaton told the other officers that Dold was not breathing and had no pulse.

129. Officer Block then started chest compressions on Dold.

130. At 10:05 p.m. Sergeant Johnson advised police radio that Dold was "in custody."

131. Deputy Marino, Monroe Police Officer Block and Mill Creek Police Officer Lemar performed CPR on Dold in an effort to revive him until medics arrived on the scene.

132. During his struggle with Dold, McGee recalled his previous experience in 2010 when he attempted to take Adam Colliers into custody.

133. On September 4, 2010, McGee was employed as a deputy sheriff by Snohomish County.

134. On that date 911 dispatched McGee to investigate a report by a citizen that the caller heard loud voices of a male and a female.

135. McGee was dispatched to an address in Gold Bar, Washington.

136. Another sheriff's deputy, Ian Whipple, arrived at the location before McGee.

137. Whipple and McGee found Colliers was talking and acting irrationally.

138. McGee believed that Colliers was under the influence of some kind of drug.

139. At Whipple's instruction, Colliers lay down on his stomach.

140. McGee and Whipple attempted to handcuff Colliers.

141. Colliers resisted by failing to put his hands behind his back as instructed.

142. McGee used his taser to attempt to get Colliers to comply.

143. McGee tased Colliers three times.

144. After the third tasing, McGee and Whipple were able to handcuff Colliers.

COMPLAINT AND DEMAND FOR JURY TRIAL – 10
(CASE NO. _____)

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6068800

145. After he had handcuffed Colliers, McGee noticed that Colliers was unconsciousness and was not breathing.

146. Medical aid was summoned and efforts were made to resuscitate Colliers, but they failed.

147. Colliers died without ever recovering consciousness.

148. Deputy McGee caused the death of Adam Colliers.

149. The cause of death for Adam Colliers was cardiac arrest brought on by multiple tasing.

150. On March 21, 2017, after struggling with Dold, McGee recalled that Colliers had died after McGee tased him and struggled with him.

151. McGee knew that because he had tased Dold and had applied a chokehold, there was a risk that Dold was also going to die.

152. At 10:07 p.m. medical aid units arrived on the scene.

153. At 10:08 p.m. medics started giving CPR and broadcast that Dold had a weak pulse and was not breathing.

154. Later that evening Dold was pronounced Dold dead at the scene.

155. The Snohomish County Sheriff's Office did not discipline McGee for his conduct in connection with his tasing of Adam Colliers.

156. On information and belief, Snohomish County did not see to it that McGee received any additional training about the risks of death caused by taser-induced cardiac arrest.

157. On information and belief, Snohomish County did not see to it that defendants McCoy and McGee received any training about the risks of death caused by taser-induced cardiac arrest.

158. Snohomish County continued employing deputy McGee after he caused the death of Adam Colliers.

COMPLAINT AND DEMAND FOR JURY TRIAL – 11
(CASE NO. _____)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6068800

159. Snohomish County's failure to take disciplinary action against McGee for his conduct towards Adam Colliers was negligent, and was a proximate cause of the death of Alexander Dold.

160. Snohomish County's continued employment of McGee following the Colliers incident was negligent and was a proximate cause of the death of Alexander Dold.

161. Long before the death of Alexander Dold, Snohomish County knew that tasing mentally ill persons created a risk that the tased person would die from either excited delirium or cardiac arrest or a combination of those two things.

162. Snohomish County recklessly disregarded that risk by failing to provide adequate training for its deputy sheriffs regarding ways of dealing with mentally ill people, or people under the influence of drugs, which would minimize the risk of causing death by use of tasers.

## IV.   CAUSES OF ACTION

**A.   DEPRIVATION OF ALEXANDER DOLD'S FOURTH AMENDMENT RIGHTS BY FAILURE TO TRAIN (*MONELL* CLAIM) (Defendant Snohomish County).**

163. Plaintiffs reallege and incorporates by reference all previous allegations.

164. The failure of Defendant Snohomish County to adequately train its officers deprived Alexander Dold of his Fourth Amendment rights under color of state law contrary to 42 U.S.C. §1983, and this failure to train was a proximate cause of Dold's death.

**B.   DEPRIVATION OF ALEXANDER DOLD'S FOURTH AMENDMENT RIGHTS BY USE OF EXCESSIVE FORCE (Defendants McGee and McCoy).**

165. Plaintiffs reallege and incorporate by reference all previous allegations.

166. The use of excessive force against Alexander Dold by defendants McGee and McCoy, was a proximate cause of Dold's death and their use of excessive force

COMPLAINT AND DEMAND FOR JURY TRIAL – 12
(CASE NO. _____)

DOL013-0001 6068800

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

deprived Alexander Dold of his Fourth Amendment rights under color of state law contrary to 42 U.S.C. §1983.

## C. DEPRIVATION OF KATHY DUNCAN'S RIGHT TO COMPANIONSHIP OF HER SON THROUGH USE OF EXCESSIVE FORCE (Defendants McGee and McCoy).

167. Plaintiffs reallege and incorporate by reference all previous allegations.

168. The use of excessive force against Alexander Dold by defendants McGee and McCoy which caused Dold's death also deprived Kathy Duncan of her substantive due process right to the companionship and society of her son thereby depriving her under color of state law of a right guaranteed by the Fourteenth Amendment Due Process Clause contrary to 42 U.S.C. §1983.

## D. DEPRIVATION OF KATHY DUNCAN'S RIGHT TO COMPANIONSHIP OF HER SON THROUGH FAILURE TO TRAIN (Defendant Snohomish County).

169. Plaintiffs reallege and incorporate by reference all previous allegations.

170. The use of excessive force against Alexander Dold by defendants McGee and McCoy which caused Dold's death also deprived Kathy Duncan of her substantive due process right to the companionship and society of her son thereby depriving her under color of state law of a right guaranteed by the Fourteenth Amendment Due Process Clause contrary to 42 U.S.C. §1983.

## E. WRONGFUL DEATH (NEGLIGENCE) (All defendants).

171. Plaintiffs reallege and incorporate by reference all previous allegations.

172. Defendants McGee and McCoy acted negligently by failing to exercise reasonable care when approaching and arresting Alexander Dold, their negligence provoked and exacerbated the situation, and such negligence constituted a proximate cause of Alexander Dold's death.

173. As employees of the defendant County, all of whom were acting within their scope of employment at all times pertinent to this case, both deputy McGee and

COMPLAINT AND DEMAND FOR JURY TRIAL – 13
(CASE NO. _____)

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6068800

deputy McCoy were acting as agents of Snohomish County and the County is therefore liable for their acts of negligence and liable for Alexander Dold's death.

### F. NEGLIGENT RETENTION (Defendant Snohomish County)

174. Plaintiffs reallege and incorporate by reference all previous allegations.

175. The County's negligent failure to discipline and/or to fire deputy sheriff Bryson McGee, after he had killed Adam Colliers with a taser, was a proximate cause of Alexander Dold's death.

### V. JURY DEMAND

Plaintiffs demand a jury of twelve.

### VI. TORT CLAIM

Plaintiffs filed a tort claim with Snohomish County on January 8, 2020.  The county denied the claim on February 28, 2020.

### VII. PRAYER FOR RELIEF

Wherefore, having stated their complaint against defendants, plaintiffs pray for the following relief:

1. Judgement against all defendants for general damages and special damages in amounts to be proved at trial.

2. Judgment against defendants McGee and McCoy for punitive damages pursuant to 42 U.S.C. §1983.

3. An award of costs and attorneys' fees, as provided for in 42 U.S.C. §1988, and any other applicable provision of statutory and common law.

COMPLAINT AND DEMAND FOR JURY TRIAL – 14
(CASE NO. _____)

DOL013-0001 6068800

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DATED this 10th day of March, 2020.

> s/ James E. Lobsenz
> James E. Lobsenz
> Attorneys for Plaintiffs
> CARNEY BADLEY SPELLMAN, P.S.
> 701 Fifth Avenue, Suite 3600
> Seattle, WA 98104
> Phone: (206) 622-8020
> Facsimile: (206) 467-8215

## VERIFICATION

I, JENNIFER DOLD, HAVE READ THIS COMLAINT AND BELIEVE THE DOCUMENT TO BE TRUE AND CORRECT TO THE BEST OF MY KNOWLEGDE.

Dated this 7th day of March 2020 at Edmonds, Washington.

Jennifer Dold

COMPLAINT AND DEMAND FOR JURY TRIAL – 15
(CASE NO. _____)

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 LI-PL-USDC-WDW Pleading - Complaint (2)