Honorable Richard A. Jones
February 26, 2021

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

JENNIFER DOLD, personal representative
of the estate of Alexander Dold; and KATHY
DUNCAN ,

               Plaintiffs,

      v.

SNOHOMISH COUNTY, a political
subdivision of the State of Washington;
BRYSON McGEE; and CODY McCOY,

               Defendants.

NO. 2:20-cv-00383-RAJ

PLAINTIFFS' OBJECTION TO JOINT
REPRESENTATION OF
DEFENDANTS McCOY AND McGEE

## I.     INTRODUCTION

Many courts have recognized that when one attorney represents multiple defendants in a police misconduct case, there is a serious potential for there to be a conflict of interest.  In this case, there are such obvious potential conflicts between defendants McCoy and McGee that joint representation of both should not be permitted.  At the very least, there should be a judicial inquiry into the defendants' understanding of what defenses they will be giving up if they consent to joint representation so that this court can determine whether their alleged consent to joint representation is fully informed.

## II.     UNDISPUTED FACTS

The following facts are undisputed.  Either these facts have already been admitted in the defendants' answers (*Dkt* #6 & #9) to the complaint, or they are attested to in the typed

PLAINTIFFS' OBJECTION TO JOINT REPRESENTATION OF
DEFENDANTS McCOY AND McGEE – 1
(2:20-cv-00383-RAJ)

DOL013-0001 6492292.docx

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

statements[1] given by officers McCoy and McGee after Alexander Dold died while struggling with them on the night of March 21, 2017.

At 9:18 and 9:19 p.m., McCoy and McGee were dispatched to investigate a 911 call made by Dold's mother Kathy Duncan. *Dkt.* #1, ¶31. Duncan told the 911 operator that her adult son, Alexander Dold, suffered from chronic schizophrenia; that he had stopped taking his medicine in November or December; that he had broken the lanyard around her neck; and that he had tried to take her phone away from her. *Id.,* ¶¶ 31-33. Duncan said she was not injured. *Id., ¶*45. She said Dold had left the house and then returned, and when he came back she acted like nothing had happened. *Id.* ¶47. Duncan asked that police officers respond because her son needed to go to hospital for psychiatric care. *Id.*, ¶¶ 38, 55. She told the 911 operator that her son was afraid of the police because a high school friend of his had been killed by a police officer. *Id.*, ¶36. The officers arrived at Duncan's house at 9:47 p.m., more than four hours after the scuffle between Dold and Duncan. *Id., ¶*61. They heard no sounds of arguing or fighting as they approached the house. *Id.*, ¶62. McGee knocked on the door to the house and Alexander Dold answered the door. *Id.*, ¶¶ 65, 67. McGee asked Dold where his mother was and Duncan said "I am right here." *Id.*, ¶¶ 68-70). McGee said he wanted to come inside the house so he could talk to Duncan and Dold said "no, she's fine" and began to close the door. *Id.*, ¶¶ 71-73. McGee prevented Dold from closing the door by putting his foot in the door. *Id.*, ¶74. McGee kept pushing and forced his way into the home *Id.*, ¶75. McCoy followed McGee in. *Id.*, ¶76.

It is undisputed that Defendant McGee alone made the decision to force his way into the Dold/Duncan house. McGee stated that *he* made the decision to prevent Dold from closing the door and *he* made the decision to push the door open and enter the house. In his typed statement, McGee stated:

---

[1] These statements were produced to plaintiff's counsel by the County and are attached to counsel's declaration.

PLAINTIFFS' OBJECTION TO JOINT REPRESENTATION OF
DEFENDANTS McCOY AND McGEE – 2
(2:20-cv-00383-RAJ)

DOL013-0001 6492292.docx

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

> *I made the decision* that the male needed to be detained to further investigate the DV and check on the mother.  *I put my foot against the door to prevent the male from closing it further.*  The male became upset and started to try and close the door on me.  Fearing for the safety of the mother and how upset the male was, *I started to push back on the door and eventually got it to start opening.* The male stepped back as *I made entry,* towards the female that I could now see.

*McGee*, at 000214 (emphasis added) (*Lobsenz Decl*., Exh. A). Similarly, in his statement, McCoy confirms that McGee is the one who decided to make a warrantless entry into the house.

> Deputy McGee then told the suspect that we needed to come inside the home to speak with his mother and to ensure her safety, this angered the suspect based on him gritting his teeth and shaking his head no.  As Deputy McGee started to enter, the suspect tried to shut the door but Deputy McGee's foot was in the way.  Deputy McGee pressed against the door.  The suspect using his whole body tried closing it on Deputy McGee, this went back and forth a couple of times until Deputy McGee successfully moved the suspect out of the way, using the door and made entry into the house.

*McCoy*, at 000269 (*Lobsenz, Decl.* Exh. B).

After McGee forced his way in, a physical struggle ensued and many of the facts regarding who did what are disputed.  It is not disputed, however, that McGee applied a lateral vascular neck restraint (a "chokehold") in an attempt to subdue Dold so he could put handcuffs on him.  Dkt. #1, ¶84.  It is also not disputed that McCoy discharged his taser at Dold three times within the space of two minutes. *Id.*, at ¶¶ 105-106. After McCoy had tased Dold three times, McGee tased Dold three more times.  *Id.*, at ¶¶ 113-116. When Dold suddenly went unconscious and limp, the officers were able to handcuff him, but Dold stopped breathing and died.  *Id.*, ¶89.  While the physiological cause of Dold's death is likely to be disputed, there will be evidence presented that he died of positional asphyxia – he died because he couldn't breathe.

### III.     CONFLICTS OF INTEREST IN POLICE MISCONDUCT CASES

**A.     Both officers are entitled to conflict-free counsel and Plaintiffs' counsel is obligated to bring the conflict of interest between them to this Court's attention.**

"When co-defendants in a §1983 action are represented by the same counsel, the trial court is obligated to ascertain that notice of any potential conflict of interest is provided to

---

PLAINTIFFS' OBJECTION TO JOINT REPRESENTATION OF
DEFENDANTS McCOY AND McGEE – 3
(2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6492292.docx

affected litigants." *Manganella v. Keyes,* 613 F. Supp. 795, 799 (D. Conn. 1985), citing *Dunton v. County of Suffolk,* 729 F.2d 903, 909 (2nd Cir. 1984).   In *Dunton,* the same attorney represented both the County and the individual officer defendant in a §1983 battery case. During trial, it became clear that there was a conflict of interest between the County and Officer Pfeiffer.   Officer Pfeiffer said he was acting in his capacity as a police officer when he used force against plaintiff Dunton.   But the attorney representing Pfeiffer and the County argued that Pfeiffer was acting as an irate husband and not as a police officer.   This argument aided the County, but it was directly against the interest of Officer Pfeiffer.   The jury rendered a verdict in Dunton's favor on his battery claim against Pfeiffer, awarding him $20,000.   The jury also rendered a verdict in the County's favor, finding the County not liable on Dunton's §1983 claim on the ground that Officer Pfeiffer had not been acting as a police officer – under color of state law – but had instead been acting as a private citizen who was simply angry with Dunton because Dunton was flirting with his wife.

On appeal, the Circuit Court held that the attorney had a conflict of interest and should not have represented both the officer and the County:

> As soon as the County Attorney began to undermine Officer Pfeiffer's good faith immunity defense by stating that Pfeiffer acted as an "irate husband" and not as a police officer, he was not only failing to act as a conscientious advocate for Pfeiffer, but was acting against Pfeiffer's interest.   The seriousness of this conflict made disqualification appropriate.

*Dunton,* 729 F.2d at 908.

The Court further held that the district court had a duty to make sure the officer understood that he was being represented by an attorney who was representing another client whose interests were adverse to his:

> Where a conflict is serious and disqualification might be warranted, the district court is under a duty to ensure that the client fully appreciates his situation.   This Court has stated that "[w]hen a potential or actual conflict of interest situation arises, it is the court's duty to ensure that the attorney's client, so involved, is fully aware of the nature of the conflict and understands the potential threat to

PLAINTIFFS' OBJECTION TO JOINT REPRESENTATION OF
DEFENDANTS McCOY AND McGEE – 4
(2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6492292.docx

the protection of his interests."

*Dunton*, 729 F.2d at 908.

The district court didn't warn Pfeiffer of his attorney's conflict of interest. The Court of Appeals held that it was not the district court's fault because it didn't know about the conflict until trial started. The Court faulted the attorneys for both sides for not bringing the conflict of interest to the Court's attention:

> Attorneys are officers of the court [citation], and are obligated to adhere to all disciplinary rules and to report incidents of which they have unprivileged knowledge involving violations of a disciplinary rule. ***The County Attorney had to know of the serious conflict his multiple representation created,*** and knew or should have known that he could not fulfill his ethical obligations to the county without seriously undercutting Pfeiffer's legal position. ***The plaintiff's attorney should also have been aware of the problem and should have called it to the attention of the court.***

*Dunton*, 729 F.2d at 909 (emphasis added).[2]  Because the County Attorney failed to argue that Pfeiffer *was* acting under color of state law, Pfeiffer did not receive a fair trial. *Id.* at 910. And because of that, the Court of Appeals vacated the jury verdict and judgment which the plaintiff had obtained, and ordered a new trial. *Id.*

In this case, the Plaintiffs are aware of the actual conflict of interest and they are calling it to the attention of this Court as the *Dunton* opinion directs. Plaintiffs have no desire to wind up in a position like plaintiff Dunton. They do not wish to try this case, win it, and then have their verdict invalidated because one of the officers, in this case most likely McCoy, then comes forward and asserts that he was not fairly represented by conflict free counsel. As set forth

---

[2] Some courts have argued that the plaintiff has no "standing" to make a motion for disqualification of defendants' counsel but that view has generally been rejected. *See, e.g., Ballew v. City of Pasadena*, 2020 WL 4919384 (C.D. Cal.) ("it is irrelevant how the disqualification issue comes to the court's attention. For example, in *Greenfield MHP Associates, L.P. v. Ametek, Inc.*, 2018 WL 538961 (S.D. Cal. 2018) , the court refused to apply standing requirements to a motion to disqualify counsel . . . The court finds the *Greenfield* court's analysis more persuasive. Adopting the reasoning in *Greenfield*, the court need not decide whether plaintiff has standing to move for disqualification because the court 'possesses the power to consider and decide the motion for disqualification by virtue of its inherent power to preserve the integrity of the adversary process.'"). *Ballew*, at *2, quoting *Greenfield* at *2 and citing *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996)). *Accord State Comp. Ins. Fund v. Drobot*, 192 F.Supp.3d 1080, 1090 (C.D. Cal. 2016).

PLAINTIFFS' OBJECTION TO JOINT REPRESENTATION OF
DEFENDANTS McCOY AND McGEE – 5
(2:20-cv-00383-RAJ)

DOL013-0001 6492292.docx

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

below, a conflict free attorney representing McCoy would be obligated to seriously consider making the argument that Dold's death is entirely – or mostly – attributable to the misconduct of Officer McGee.  A conflict free attorney would almost certainly argue that McCoy did nothing wrong and that Dold's death is all McGee's fault.  But if both are represented by the same attorney, as defendants now propose, then that attorney cannot make that argument on behalf of McCoy without acting directly against the interests of her other client Officer McGee.

**B.    If an attorney's duty to one client will be materially limited by his duty to another client, then that attorney cannot represent both clients.**

RPC 1.7(a) states: "A lawyer shall not represent a client if the representation" of that client "will be materially limited by the lawyer's responsibilities to another client . . . ."  *See In re Discipline of Egger,* 152 Wn.2d 393, 98 P.3d 477 (2004) (six month suspension for violating rule); *Eriks v. Denver,* 118 Wn.2d 451, 824 P.2d 1207 (1992) (by representing both investors and promoters, attorney violated prior rule, CPR 5-105, which prohibited simultaneous representation of multiple clients if the lawyer's independent judgment on behalf of one client will be or is likely to be adversely affected by his representation of another client, because he was unable to advise investors if they had any legal recourse against promoters).

State law governs questions of conflicts of interest and disqualification.  *Radcliffe v. Hernandez*, 818 F.3d 537, 541 (9th Cir. 2016).  A federal court "must follow the reasoned view of the state supreme court when it has spoken on the issue." *Id.* at 543.

As noted below, like the attorney in the *Eriks* case, one lawyer cannot represent both McCoy and McGee because the duty of loyalty to McGee will require the lawyer to consider arguing that the physical struggle and Dold's resulting death never would have happened if McGee had not made an unconstitutional warrantless forced entry into the house in a situation where there were no exigent circumstances which justified forced entry. At the same time, the lawyer's duty of loyalty to McGee will require the lawyer to argue that McGee's warrantless entry was constitutional because there were exigent circumstances.  Thus, the lawyer's duty to

---

PLAINTIFFS' OBJECTION TO JOINT REPRESENTATION OF
DEFENDANTS McCOY AND McGEE – 6
(2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6492292.docx

one will be materially limited by the lawyer's duty to the other.

## IV.   SIMULTANEOUSLY REPRESENTING McCOY AND McGEE WILL MATERIALLY LIMIT THE ABILITY TO FAIRLY REPRESENT McCOY.

**A.**   **In police misconduct cases where a lawyer has conflicting loyalties to multiple officer clients, the lawyer may be disqualified from representing anyone and the district court is obligated to consider the sufficiency of any written consent to joint representation to see if "informed" consent was given.**

In *Ballew v. City of Pasadena*, 2020 WL 4919384 (C.D. Cal.) the plaintiff brought §1983, battery and false imprisonment claims against several police officer defendants. When one attorney appeared to represent all of the officer defendants, the plaintiff moved for disqualification of the attorney on the ground of a conflict of interest that materially limited the attorney's ability to represent all of them. The plaintiff cited California's Rule of Professional Conduct 1.7(b) which is nearly identical to Washington's RPC 1.7(a).

The attorney representing the officers argued that disqualification was not required because he had obtained waivers from each of the officers. First, the *Ballew* Court recognized that "not all conflicts are waivable" and that "[t]here are some matters in which the conflicts are such that written consent may not suffice[.]" *Ballew*, at * 4, quoting California's RPC 1.7, cmt. 8. Second, the *Ballew* Court then considered the fact that the attorney representing the officers had not filed any declarations from their clients so the Court had no way of knowing if the officers had given their "informed consent" to joint representation:

> *[D]efendants did not submit declarations addressing the factors noted below, or copies of the conflict waivers* with their opposition. Without such information, the court is not in a position to determine whether defense counsel violated their duty of loyalty and whether defendants gave informed written consent to the waiver of any actual or potential conflicts of interest.

*Id.* at * 6 (emphasis added). *See also Brumfield v. City of Seattle*, 2011 WL 13127184 (W.D. Wash.).[3]

---

[3] In *Brumfield*, the same attorney proposed to represent both the defendant City and the defendant officer. The district court noted that "[t]he City has not provided the Court with its written informed consent. Although

PLAINTIFFS' OBJECTION TO JOINT REPRESENTATION OF
DEFENDANTS McCOY AND McGEE – 7
(2:20-cv-00383-RAJ)

DOL013-0001 6492292.docx

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

In this case, as in *Ballew*, defense counsel have failed to file the written consent letter they have obtained from McCoy and McGee along with their motion.  They represent that they will make this letter "available to the Court to review *in camera* upon the Court's request." *Dkt. #24,* at 2:1-2.  Plaintiffs object to the attempt to prevent them from seeing the consent letter.  Moreover, even if defendants file this letter along with their reply brief in support of their motion, the disclosure of the letter in a reply will deprive the plaintiffs of any opportunity to address its sufficiency.

The *Ballew* court was not satisfied with the mere "assert[ion] that '[a]ll of the defendants have signed conflict waivers in this matter, agreeing to their concurrent representation by the law firm ….'" *Ballew*, at *7.  The court explained why such an assertion was not sufficient:

> [D]efendants did not submit copies of their conflict waivers ***with*** their opposition and without such waivers, ***the court cannot determine whether to allow defense counsel to proceed despite the conflict.***  District courts have 'substantial latitude' in approving waivers of conflicts of interest.  Determining whether a client provided adequate informed, written waiver is ***obviously a fact-specific inquiry***.

*Ballew*, at *7 (citations omitted)(emphasis added).

In *Ballew* the Court ordered defense counsel to "file" (thus disclosing it to the plaintiff) "a Notice of Filing of Conflict Waivers, and Supporting Declarations" which, "[a]t a minimum . . . shall include:"

A. ***All conflict waivers signed by all defendants*** in connection with this case.

B. ***Declarations under penalty of perjury from the City Attorney and the Firm*** addressing RPC 1.7 and (i)  The waivers' breadth; (ii) their temporal scope, i.e. whether they waived only current conflicts or applied to all future conflicts; (iii) the quality of the discussion(s) between attorneys and clients; (iv) the specificity

---

[Officer] Dyment has consented in writing, his consent notes that he does 'not believe there to be any conflict of interest.' (Dyment Decl. (Dkt. No. 38 at 2).) Dyment's statement indicates that he may not fully understand the potential conflict as Rule 1.7(b) contemplates.  Accordingly, to continue with joint representation, Defendants must provide the Court with their written informed consent as Rule 1.7(b) requires."  In *Brumfield*, the plaintiff's motion for disqualification was not timely made: "Plaintiff makes this request [for disqualification] eight months after Defendants jointly answered (Dkt. No. 31) and three months before the expected start of the trial (Dkt. No. 8).  While the motion is not egregiously late . . . [the Plaintiff's delay in making the motion] tips in Defendants' favor." *Id.* at *2.  In this case, Plaintiffs are immediately objecting to defense counsel's motion seeking permission to have one law firm undertake joint representation of both officer defendants.

PLAINTIFFS' OBJECTION TO JOINT REPRESENTATION OF DEFENDANTS McCOY AND McGEE – 8 (2:20-cv-00383-RAJ)

DOL013-0001 6492292.docx

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

of the waivers; (v) the nature of the actual and potential conflicts; (v) the sophistication of the clients; and (vii) the interests of justice.  In addition, ***all defense counsel shall indicate***, without revealing the substance of such information, ***whether he or she received confidential information . . . that could help one client at the expense of another***, and whether such information has been revealed to all the clients."

C.  In addition to the requirements set forth in paragraph B above, ***all defendants shall provide declarations that at a minimum, include the following:*** (i) a statement that they received and reviewed a copy of this Order; (ii) the number of times each defendant discussed the conflict waiver(s) with each defense counsel team . . . (iii) the nature of the actual and potential conflicts of interest discussed; (iv) whether defendants were advised to have the conflict waiver reviewed by independent counsel and whether they did so; and (v) whether defendants and defense counsel discussed the risk of sharing confidential information that could be harmful to one party, but beneficial to the other.

*Ballew*, at *8 (emphasis added).  Finally, the *Ballew* Court's order stated that Plaintiff, after conferring with defense counsel, would be permitted to file another motion to disqualify after defense counsel had filed all the requisite documents and declarations. *Id*. at *9.

**B.      Dold is not the first person McGee has killed. He also killed Adam Colliers and positional asphyxia and tasing played a role in Colliers' death.  Any lawyer representing McCoy would argue that McGee's prior experience in killing Colliers made McGee's conduct in this case constitutionally unreasonable.**

Plaintiffs have asserted Fourth Amendment excessive force §1983 claims against both officer defendants.  In this case, McGee not only applied a Lateral Neck Vascular Restraint and eventually choked Alexander Dold into unconsciousness, he also tased Dold three times *after* McCoy had tased him.  One of the principle claims raised by Adam Colliers' estate was that McGee tased Adam Colliers repeatedly, and that these taser applications were causally related to Collier's death. *Butterfield v. Snohomish County*, Case No. 2:13-cv-01091-TSZ, *Dkt.* #12, at 9:1-22; 10:1-13.[4]  In addition, when he tased him, Colliers was lying face down on the ground and McGee had his knee pressing into Colliers' back when he tased him the third time. *Id.*  Like Dold, Colliers lost consciousness, stopped breathing, and despite CPR efforts, his heart stopped

---

[4] The *Butterfield* case was settled and never went to trial.

PLAINTIFFS' OBJECTION TO JOINT REPRESENTATION OF
DEFENDANTS McCOY AND McGEE – 9
(2:20-cv-00383-RAJ)

DOL013-0001 6492292.docx

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

and he died.

Any defense attorney representing McCoy would find it advantageous to McCoy to argue that McGee clearly knew that the repeated tasing of a person who is lying face down on the ground (as both Colliers and Dold were) poses a serious risk of killing them, and yet having already killed one person in this manner McGee did the same thing to Dold and killed him as well. It is clearly in McCoy's interest to make the argument in this case that but for McGee's conduct, not only in choking Dold continually for several minutes, but also in tasing him repeatedly, Dold would not have died. But if one attorney represents both McGee and McCoy, that attorney's duty of loyalty to McGee will preclude her from making this argument.

**C.    Joint representation of both officers will also preclude the attorney from arguing that if McGee had not made an unconstitutional warrantless entry into the Dold/Duncan house, there never would have been any struggle and Dold would not have died.**

It is "[a] 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez,* 540 U.S. 551, 559 (2004), quoting *Payton v. New York,* 445 U.S. 573, 586 (1980).

> At least since 1604 it has been settled that in the absence of exigent circumstances, a government agent has no right to enter a "house" or "castle" unless authorized to do so by a valid warrant. See *Semayne's Case,* 5 Co. Rep. 91a, 77 Eng. Rep. 194 (K.B.). Every occupant of the home has a right-protected by the common law for centuries and by the Fourth Amendment since 1791 to refuse entry.

*Georgia v. Randolph*, 547 U.S. 103, 123-24 (2006).

The warrant requirement is subject to certain exceptions and one of these is the exception for exigent circumstances. "One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). "Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant *from imminent injury*." *Id.* (italics added). "When an officer undertakes to act as his

PLAINTIFFS' OBJECTION TO JOINT REPRESENTATION OF DEFENDANTS McCOY AND McGEE – 10 (2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6492292.docx

1   own magistrate, he ought to be in a position to justify it by pointing to some *real immediate* and

2   serious consequences if he postponed action to get a warrant." *McDonald v. United* States, 335

3   U.S. 451, 460 (1948).   *Accord United States v. Camou*, 773 F.3d 932, 940 (9ᵗʰ Cir.

4   2014)("exigent circumstances … require immediate police action").   In this case, there is no

5   evidence whatsoever that there was any "imminent" or "immediate" risk of injury to Kathy

6   Duncan.  It is undisputed that Dold pushed her *more than four hours before the officers arrived*

7   *on the scene*.   They neither heard nor saw anything to indicate that she was in any imminent

8   danger.  McGee saw Duncan standing behind Dold, Dold pointed to her, and Dold said she was

9   fine.  McGee claimed he "needed" to talk to her.  He could have talked to her by phone.  He

10  could have talked to her through the door.  He could have asked her to step outside the house

11  and talk to him.  He did none of these things, he just forced his way in. Given the undisputed

12  facts, it is incredibly unlikely that any jury would ever find that there were exigent

13  circumstances such that there was an "imminent" risk that Dold would injure Duncan.   Thus,

14  McGee violated Dold's Fourth Amendment right to refuse entry to an officer who did not have

15  a warrant authorizing him to enter.

16       When an officer "fail[s] to follow police practices calculated to avoid the use of deadly

17  force," and thereby creates the need to use force, uses force, and injures someone, the officer

18  can be held liable for negligently causing the need to use that force. *Beltran-Serrano v. Tacoma*,

19  193 Wn.2d 537, 544, 442 P.3d 608 (2019).  That is precisely what defendant McGee did.  He

20  failed to get an arrest warrant and forced entry without one.  It has long been recognized that

21  "the possession of a warrant by officers conducting an arrest or search greatly reduces the

22  perception of unlawful or intrusive police conduct, by assuring the individual whose property

23  is searched or seized of the lawful authority of the executing officer, his need to search, and the

24  limits of his power to search." *Illinois v. Gates,* 462 U.S. 213, 236 (1983).  By entering without

25  a warrant, McGee ignored Dold's right to refuse him entry, created the very type of situation

26  which is likely to lead to a physical altercation, and which *did* in fact lead to a struggle and to

PLAINTIFFS' OBJECTION TO JOINT REPRESENTATION OF
DEFENDANTS McCOY AND McGEE – 11
(2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6492292.docx

a death that need never have occurred.  Thus, McGee's unlawful entry was the proximate cause of the fight, and had he not made the unlawful entry, there would have been no struggle and Dold would never have been killed.  It is in McCoy's interest to make this argument that the whole incident is McGee's fault.  But if the same attorney is representing McGee and McCoy, the attorney cannot make that argument.  Thus, there is a second reason why the lawyer's ability to fairly represent McCoy is materially limited.

**D.      The attorney cannot use confidential information from one officer for the benefit of the second officer, if to do so would be harmful to the first officer.**

Suppose the attorney obtains confidential information from McGee about why he choked and tased Dold.  For example, suppose McGee were to tell the attorney that he lost his temper with Dold and that he tased him repeatedly simply because he was angry with him.  Two neighbors gave statements that during the struggle between Dold and the officers they heard "a voice . . . that said multiple times, stop fighting, I'm gonna break your fingers, I'll shoot you." *Lobsenz Declaration*, Exh. C, Statement of Jason Padvorac, at 000587.  "I heard a male voice that wasn't Alex say I'll shoot you." *Id.* at 000590.[5]  It would be to McCoy's advantage to use this information to argue that McGee also killed Dold because he was angry with him and he didn't care about the risk of killing him.  But the attorney could not use this information to benefit McCoy without harming McGee.

## V.      CONCLUSION

In sum, the presence of actual conflicts of interest should lead this court to prohibit one defense counsel from representing both McGee and McCoy.  Plaintiffs submit that even if defense counsel has thoroughly disclosed the specific conflicts outlined above and even if both officers have given their written consent, these conflicts are so severe that this Court should

---

[5] Similarly, the other neighbor stated "I was pretty afraid because I heard the guy say I'm gonna break your fingers, man.  And then, and this is before Jason got there.  And then he said, I could shoot ya.  And that made me very afraid." *Lobsenz Decl.*, Exh. D, at 00597.

PLAINTIFFS' OBJECTION TO JOINT REPRESENTATION OF DEFENDANTS McCOY AND McGEE – 12 (2:20-cv-00383-RAJ)

DOL013-0001 6492292.docx

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

1  prohibit joint representation of both of them by one law firm.

2          Alternatively, Plaintiffs submit that a searching judicial inquiry is required so that the

3  defendants' alleged consent can be deemed "informed" and before joint representation can be

4  permitted.  At a minimum, this court should follow a procedure similar to that employed in the

5  *Ballew* case and require defense counsel to submit declarations similar to those required in the

6  *Ballew* case.  After such declarations have been filed, it would be appropriate for the court to

7  follow the procedure that the Honorable Ricardo Martinez followed in a similar case.  In that

8  case, the court inquired personally of the officer defendants to see if true informed consent was

9  being given.

10         DATED this 22nd day of February, 2021.

11

12         _____*s/ James E. Lobsenz*_____
           James E. Lobsenz WSBA #8787

13         Attorneys for Plaintiffs
           CARNEY BADLEY SPELLMAN, P.S.

14         701 Fifth Avenue, Suite 3600
           Seattle, WA 98104

15         Phone:  (206) 622-8020
           lobsenz@carneylaw.com

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' OBJECTION TO JOINT REPRESENTATION OF
DEFENDANTS McCOY AND McGEE – 13
(2:20-cv-00383-RAJ)

DOL013-0001 6492292.docx

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of February, 2021, I electronically filed the foregoing **PLAINTIFFS' OBJECTION TO JOINT REPRESENTATION OF DEFENDANTS MCCOY AND MCGEE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Defendants Snohomish County and Bryson McGee**
Geoffrey A. Enns      geoffrey.enns@co.snohomish.wa.us
Margaret A. Duncan    margaret.duncan@co.snohomish.wa.us
Katherine H. Bosch    kbosch@snoco.org

**Attorneys for Defendant Cody McCoy**
Shannon M. Ragonesi   sragonesi@kbmlawyers.com

DATED this 22nd day of February, 2021.

_s/ Deborah A. Groth_
Legal Assistant

PLAINTIFFS' OBJECTION TO JOINT REPRESENTATION OF
DEFENDANTS McCOY AND McGEE – 14
(2:20-cv-00383-RAJ)

DOL013-0001 6492292.docx

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020