Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

JENNIFER DOLD, personal representative of the estate of Alexander Dold; and KATHY DUNCAN,

Plaintiffs,

v.

SNOHOMISH COUNTY, a political subdivision of the State of Washington; BRYSON McGEE; and CODY McCOY,

Defendants.

NO. 2:20-cv-00383-RAJ

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CAUSATION AND COLOR OF LAW ELEMENTS OF THEIR FOURTH AMENDMENT EXCESSIVE FORCE CLAIM

**NOTE ON MOTION CALENDAR: APRIL 15, 2022**

## I.  INTRODUCTION AND RELIEF REQUESTED

Plaintiffs have brought Fourth Amendment excessive force claims against defendants McGee and McCoy.

## II.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment[1] is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

---

[1] In accord with LCR 7(e), on March 11, Plaintiffs filed a motion for leave to file three separate summary judgment motions, or in the alternative, for leave to file one over-length summary judgment motion. This motion is still pending.  In the event that the Court does not approve the filing of separate summary judgment motions, Plaintiffs will refile one summary judgment motion which complies with the Court's directions.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CAUSATION AND COLOR OF LAW ELEMENTS OF THEIR FOURTH AMENDMENT EXCESSIVE FORCE CLAIM – 1 (2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6867764

1     *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Here, there are no issues of

2     material fact regarding the elements of causation and acting under color of state law. It is

3     undisputed that the officers' prolonged physical struggle was the cause-in-fact of Dold's death.

4     It is also undisputed that Dold's heart was somewhat enlarged and that this placed him at greater

5     risk for a sudden cardiac arrest.  The Defendants imply that this heart defect was a contributory

6     causal factor in Dold's death, and since they did not know about it, they cannot be held liable

7     for his death.  But the well-established doctrine of the eggshell plaintiff applies in §1983 cases

8     as it does in other tort actions, and it dictates that defendants who physically strike another

9     person are liable for all the consequences of their act, including death, even if death was entirely

10    unforeseeable.  Alexander Dold died while struggling with the deputies.  All the experts agree

11    that he died because the struggle produced metabolic acidosis which eventually caused his

12    cardiac arrest.  Thus, there is no genuine material dispute regarding proximate causation either.

13    Finally, there is no dispute that the deputies were acting under color of state law. Therefore,

14    Plaintiffs are entitled to an order of partial summary judgment holding that these elements have

15    been established as a matter of law.  The only issue remaining for the jury's determination is

16    the question of whether the Plaintiffs can prove the element of the use of an objectively

17    unreasonable amount of force.

### III.   ARGUMENT

**A.   General Causation principles in 1983 cases.**

20         "One of Congress' primary goals in enacting §1983 was to provide a remedy for killings

21    unconstitutionally caused or acquiesced in by state governments." *Chaudhry v. City of Los*

22    *Angeles*, 751 F.3d 1096, 1103 (9th Cir. 2014), citing *Monroe v. Pape*, 365 U.S. 167, 172-76

23    (1961).  State laws which purport to limit full recovery in a 1983 action are inconsistent with

24    Section 1983's goals of providing compensation and deterrence. *Robertson v. Wegmann*, 436

25    U.S. 584, 589-90 (1978).  For example, a state law that denies pre-death pain and suffering

26

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON THE CAUSATION AND COLOR OF LAW ELEMENTS OF
THEIR FOURTH AMENDMENT EXCESSIVE FORCE CLAIM – 2
(2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6867764

damages is unenforceable in a 1983 action because it undermines Congress' goal of providing redress for all of the injuries caused by an unlawful police killing.  In *Chaudhry*, where a police officer shot and killed the decedent, a jury awarded his survivors $1 million for pre-death pain and suffering and $700,000 for loss of life.  The district court vacated the pain and suffering award on the ground that it was precluded by California's survival statute, but the Ninth Circuit reversed and reinstated it, recognizing that "[i]n cases where the victim dies quickly" the practical effect of California's disallowance of pre-death pain and suffering damages would "be no damage remedy at all" if the state statute was followed. *Id.* at 1104.

The plain language of 42 U.S.C. §1983 contains a causation requirement:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, ***subjects, or causes to be subjected,*** any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

(Emphasis added).

A plaintiff in a §1983 action must prove (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity by the Constitution.  *Leer v. Murphy*, 844 F.2d 628, 632 (9th Cir. 1988) [HN6].  "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act . . . which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]." *Id.* at 633, quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation.  *Harper v. City of Los Angeles,* 633 F.3d 1010, 1026, 1028 (9th Cir. 2008) (Held there was substantial evidence that the former Chief of Police caused the prosecutor to file criminal charges against Plaintiffs despite lack of probable cause and intentionally hampered the prosecutor's investigation).

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CAUSATION AND COLOR OF LAW ELEMENTS OF THEIR FOURTH AMENDMENT EXCESSIVE FORCE CLAIM – 3 (2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6867764

1

**B.**     **The Defendants have conceded that the deputies' physical struggle with Alexander Dold while trying to take him into custody was a cause-in-fact of Dold's death.**

2

3          In this case, there is no disputed issue of fact with respect to the cause-in-fact element

4    of the Plaintiff's Fourth Amendment excessive force claim.   All of the defendants' expert

5    witnesses have stated that they agree that the physical struggle between Alexander Dold and

6    deputies McGee and McCoy was a contributory cause of Dold's death.  The Snohomish County

7    Medical Examiner Dr. Daniel Selove concluded that Dold's "physical altercation with law

8    enforcement officers" was a significant cause of his death.[2]

9          Dr. Donald Dawes, one of the County's expert witnesses, "agreed with [Dr. Selove]"

10   on that[3] and conceded that it was the officer's use of force in the course of their struggle to

11   arrest Alexander Dold that caused his death. Asked why he agreed that the struggle caused

12   Dold's death, Dr. Dawes replied, "[w]ell, because the physical altercation assuredly at that level

13   for that duration led to metabolic acidosis."[4] Dawes said that the term "physical altercation"

14   meant "[t]hat basically is the struggle, his fighting exertion that he's going through. . . . It's . . .

15   the exertion that he's incurring."[5]

16          I think if you take this case and you take out the taser, he dies anyway. *If you take out everything, the exertion, the struggle and leave the taser, he doesn't die.* That is my opinion.[6]

17

18          Dr. Dawes explained at length what acidosis is and how it can lead to death:

19           A. Metabol-- So, acidosis is a pH less than -- The normal body pH is 7.4.

20           Q. And acidosis is a body pH less than 7.4?

21           A. Correct.

22   ────────────────────

    [2] Autopsy Report at 3 (Appendix A to Decl. Lobsenz).

23       [3] Dawes, at 93:8-12; 147:24-148:3. He did not agree with Dr. Selove that the use of a taser was a significant cause, and he said he [didn't] "have an opinion" as to whether Dold's schizophrenia was a significant contributory cause.  Dawes, at 147:15-21.

24
    [4] Dawes, at 148:4-7.

25       [5] Dawes, at 148:8-12.

    [6] Dawes, at 148:18-21 (italics added).

26

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT     **CARNEY BADLEY SPELLMAN, P.S.**
ON THE CAUSATION AND COLOR OF LAW ELEMENTS OF          701 Fifth Avenue, Suite 3600
THEIR FOURTH AMENDMENT EXCESSIVE FORCE CLAIM – 4         Seattle, WA 98104-7010
(2:20-cv-00383-RAJ)                                                                 (206) 622-8020

DOL013-0001 6867764

Q. Okay. And does that have -- As, as the pH gets lower and lower, does that
   have health consequences?

A Yes.

Q. What are they?

A. Well, there could be a whole host of consequences. It can affect the, the
   performance of the heart, you know, myocardial contractility, can affect the
   strength of the muscles of respiration, like the diaphragm. It can affect brain
   functioning. I mean, acidosis can have a whole wide range of organ effects,
   but the ones usually of interest are the heart and lung effects.

Q Okay. And as acidosis gets more and more severe can it cause death?

A. Yes.[7]

He explained how acidosis can cause death because of the effect it has on the lungs and on the

heart; and because the brain stem controls the autonomic nervous system which controls basic

cardiorespiratory functions, acidosis can also cause brain death that leads to cardiac arrest.[8]

Q  So, as I understand it, you tell me if this is right, if you agree with this: If
   acidosis gets too high and the brain stem gets affected it can indirectly cause
   death because either your breathing stops or your heart stops?

A Yes.[9]

Dr. Dawes also explained how vigorous exercise of the muscles, which occurs when a

person struggles physically with police, causes a build-up of lactic acid,  which increases the

amount of $CO_2$ in the blood thereby causing a change in the pH of the blood and decreasing

the oxygen-carrying capacity of the blood.[10] And he explained how, in the course of a prolonged

physical struggle with law enforcement officers, this process ultimately can lead to death:

Q. Okay. Maybe it would help if we -- if I go now to the general situation of
   where a police officer is struggling with somebody to put handcuffs on them.
   The more the person struggles and the longer the person struggles and fights

---

[7] Dawes, at 73:17-74:9.

[8] Dawes, 74:10-76:11.

[9] Dawes, at 76:12-16.

[10] Dawes, at 78:23-80:6.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON THE CAUSATION AND COLOR OF LAW ELEMENTS OF
THEIR FOURTH AMENDMENT EXCESSIVE FORCE CLAIM – 5
(2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6867764

with the police officer, what's the effect on these systems for these, these ways aerobic and anaerobic that the body has for dealing with the problem?

A. It's just the same as when you're exerting yourself heavily, you can't continue to use the aerobic pathway, you have to convert to the inefficient anaerobic pathway, and you form lactic acidosis, and you have to use the $CO_2$ buffering system to drop the lac-- to drop the acidosis.

Oh, I'm sorry. "Correct the acidosis." I shouldn't say "drop" because that's confusing.

Q. So, what's happening is the longer it goes on the further and further it sort of -- I don't know if the word is "behind," but the respiratory way of blowing it off doesn't work anymore, it doesn't keep up? Is that a fair way of saying?

A. For sure there's a point at which -- There's certain capacities for everything; right? And you can exceed that capacity and eventually not be able to keep your C-- your pH balance. That occurs in lots of different things.

Q. Okay. And then from the -- And it can happen, anyway, that higher and higher -- Well, actually, it's lower and lower the pH gets -- right -- the higher and higher acid gets, you can eventually die of that?

A. Yes.[11]

The more a person struggles, the more the body's acidosis increases in a kind of downward spiral. Dr. Dawes explained why this is a common pathway to death when a person resists:

Well, because it -- because if you -- As, as you become more acidotic and you're using this, what we, you know, consider the immediate buffering system, the breathing system -- There's obviously kidneys filtering systems and other things that occur later. But the more you're using that, there's -- the muscle the faster -- *the respiratory muscles get tired themselves,* just like any muscle. And the more that these muscles are in this kind of skew or milieu of acidosis that negatively impacts their contractility. And so, but they are not only getting tired, but *now they can't contract as efficiently, which means you can't keep up, which means you get more acidic. If you get more acidic and you continue to fight, they get tired, they get less contractility and eventually go to respiratory failure.* We see that in diabetic ketoacidosis. *That's a pretty common pathway to death.*[12]

---

[11] Dawes, at 80:7-81:11.

[12] Dawes, at 82:2-18

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CAUSATION AND COLOR OF LAW ELEMENTS OF THEIR FOURTH AMENDMENT EXCESSIVE FORCE CLAIM – 6 (2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6867764

Dr. Dawes agreed that this is what happened; the more Dold struggled with the police, the worse his acidosis got, and eventually his heart stopped because of it:

Q Okay. There's some comments in your report about *the general situation of a police officer fighting with the subject to restrain him, and you say, "The subject usually fights attempts to restrain him."* And my question is, you certainly saw the effect of that in this case; correct?

A *Correct*.

Q Okay. And you said in your report that, "This kind of fighting leads to a metabolic tailspin;" correct?

A It can, yes.

Q Well, in this case was it not your opinion that it did?

A *Yes*.[13]

Finally, Dr. Dawes opined that Dold would not have died that night if the deputies had never contacted him and there had never been any struggle:

Q. . . . Why don't you assume that the officers never went to the house, never contacted Mr. Dold and so there was never any confrontation between the police and Alexander Dold at all. If nobody went to the house that night, you agree with me, do you not, that *he would not have died*?

A. *I would say that's probably the case.*

Q. Okay. Now, let's assume that they went to the house, these officers went to the house, but *there was never any physical fight*. Let's assume that they said, "We'd like to take you to the mental hospital in the next town," and they did and there was never any physical fight. *You assume that he probably wouldn't have died; right*?

A. *I would agree with that.*[14]

Dr. Chan, an expert for the County, also agreed that metabolic acidosis, brought about by physical struggle, was also a contributing cause of Dold's death:

Q  Do you agree with this statement? "In many cases there's more than one cause of a person's death."

---

[13] Dawes, at 85:24-86:10

[14] Dawes, at 94:8-21 (italics added).

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CAUSATION AND COLOR OF LAW ELEMENTS OF THEIR FOURTH AMENDMENT EXCESSIVE FORCE CLAIM – 7 (2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6867764

2a40001a0c680d43

A. Well, again, depending on, on the circumstances and the exact details there could be multiple causes. There could be a primary cause and contributing factors.

Q. Isn't that what you just said that you do agree with Dr. Selove that one of the contributing factors was his struggle with the police but there are others?

A. Yes.[15]

Finally, Dr. Stanley Adams, the doctor who actually performed the autopsy, took issue with the fact that Dr. Selove changed Dr. Adams' draft of the autopsy report by changing the classification of the death from Homicide to Accident.  Dr. Selove reasoned that the deputies did not commit Homicide because they did not intend to cause Alexander Dold's death.  Dr. Adams explained that Homicide includes unintentional killings (that's what manslaughter is) and regardless of whether or not they intended to kill Alexander Dold, they *caused* his death:

A.  . . . [T]he thing that he changed was, in particular, was the manner of death. And that's – I have a little bit of heartburn with that because he took my correct answer and he changed it to an incorrect answer. He put "accident", and this is a homicide.

Q. Why do you say it's a homicide?

A  Because when one human being does an action or neglects to do an action *that caused the death of another*, it really doesn't matter about the intent, you know.[16]

In sum, all the defense experts agree[17] that the police officers were the cause-in-fact of Dold's death.  It was the violent struggle to handcuff him that killed him.

---

[15] Chan, at 9:10-18.

[16] Adams, at 70:21-71:6.

[17] On this point, they are also in agreement with Plaintiff's expert Dr. Sperry, who also has opined that Dold's death was caused by metabolic acidosis which was itself caused by the use of force by the deputies in their struggle to handcuff Dold.  Sperry, at 67:22-68:6, 82:20-83:18; 93:13-21; 101:18-102:19l 103:2-22; 109:21-114:23.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CAUSATION AND COLOR OF LAW ELEMENTS OF THEIR FOURTH AMENDMENT EXCESSIVE FORCE CLAIM – 8 (2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6867764

**C.**   **The Defendants stress the fact that Dold had an enlarged heart, and that such a person has a greater risk of death by a sudden cardiac arrest if they engage in a physical struggle.**

Dr. Stanley Adams, who performed the autopsy on Dold, explained that he had an enlarged heart, and that such a person is more vulnerable to a sudden cardiac arrest when he gets into a physical altercation:

> Those people kind of are living on borrowed time. And so in someone like him, even if he got into a struggle, you know, just the physical altercation could push a heart like that into an arrhythmia, because what happens during a struggle is your system is getting flooded with hormones like adrenaline, and the adrenaline can make the heart more susceptible, you know, to that, that type of electrical abnormality.
>
> So just the fight with the deputies could have caused his existing heart disease to manifest as a sudden cardiac death.[18]

Similarly, Dr. Bruce Vilke has opined that Dold's sudden cardiac arrest was "due to exertion causing a lot of increased acidosis, lactic acid production and its effect on his abnormally enlarged hypertrophied heart causing a sudden dysrhythmia and sudden death."[19]  Dr. Vilke agreed that the enlarged heart alone was not the cause of Dold's death, and concluded that "more likely than not, had he not been involved in any struggle or anything going on that night . . . he probably wouldn't have died."[20]  The deputy Defendants rely on the fact that Dold "was more vulnerable to this type of sudden cardiac arrest because he had an enlarged heart"[21] as the basis for an argument that the Plaintiffs cannot prove the element of proximate causation.  But this argument conflicts with well settled law.

---

[18] Adams, at 130: 5-16.

[19] Vilke, at 31:5-9. Dr. Vilke agreed that without the physical exertion –the struggle with the deputies – Dold would not have had a cardiac arrest and would not have died.  Vilke, at 32:11 – 33:7 ("A.  Yeah, it was his resistance and the struggle that caused this. . . Q.  . . . If he'd engaged in a twelve-to-fifteen-minute struggle with police the night before he might have died the night before. But he   didn't do that the night before, so it's not a coincidence that it happened on March 21st, the night that he did have that kind of a struggle; right? . . A. I guess it was the struggle that led to this cascade that occurred. So, I guess that -- It's not a coincidence that that happened."

[20] Vilke, at 33:8-23.

[21] Vilke, at 31:14-17.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CAUSATION AND COLOR OF LAW ELEMENTS OF THEIR FOURTH AMENDMENT EXCESSIVE FORCE CLAIM – 9 (2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6867764

**D.     The "Eggshell Plaintiff" doctrine applies in §1983 actions involving Fourth Amendment excessive force claims.**

It is undisputed that Alexander Dold had an enlarged heart.  There is a dispute as to whether the enlargement was "mild" or "moderate," and there is a dispute as to whether his enlarged heart placed him at a greater risk of sudden cardiac arrest if he engaged in exertional physical activity such as his struggle with the deputies.  Defendants' experts say that it did and that his enlarged heart was a contributory cause of Dold's death.  Dr. Sperry disagrees and says that it was not.  But this dispute is simply legally irrelevant.

For purposes of this summary judgment motion, this Court must assume that the defendants' experts are right, that Dold's somewhat enlarged heart made him more vulnerable to cardiac arrest, and that when the deputies physically hit him, choked him, and restrained him in a face down position and placed some weight on his back, the fact that he had a defective heart is why he died of cardiac arrest.  But that simply means that Alexander Dold was a classic "Eggshell Plaintiff."  The prototypical eggshell plaintiff is usually described as having an eggshell skull.  For purposes of this motion, it must be assumed that the defendants are correct and Dold had an Eggshell Heart.  But it doesn't matter which body or organ is unusually weak, vulnerable, or defective.  As in any other kind of tort case, a defendant in a §1983 case must take the injured victim as he is.  While the defendants' experts have impliedly asserted that the defendant deputies cannot be held liable, because they did not know that Dold had an Eggshell Heart.  The law is well established that this is legally irrelevant.

For example, in *Figueroa-Torres v. Toledo-Davila*, 232 F.3d 270 (1st Cir. 2000), an arrestee died shortly after his arrest.  His survivors brought suit pursuant to §1983 against the arresting officers and a jury found for the plaintiffs.  In the course of arresting him, the offices hit and kicked him while he was lying down on the sidewalk.  The arrestee died of a ruptured spleen. *Id.* at 273-74.  The doctor who performed the autopsy testified that the decedent's spleen had some kind of disease that caused it to be enlarged and that enlargement made the spleen

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON THE CAUSATION AND COLOR OF LAW ELEMENTS OF
THEIR FOURTH AMENDMENT EXCESSIVE FORCE CLAIM – 10
(2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6867764

easier to lacerate than a normal spleen.  *Id.* The officers argued that the proximate cause of death was the fact that the spleen was diseased and enlarged and that they could not be held liable because they had no way of knowing that the decedent had an enlarged spleen.  The First Circuit rejected the officers' contention that the eggshell skull doctrine was incorrectly applied and affirmed the verdict for the Plaintiff.  *Id.* at 275.[22]  Quoting from *Prosser and Keeton on the Law of Torts*, §43 at 291 (5th ed1984), the Court held there was "almost universal agreement upon liability beyond the risk for quite unforeseeable consequences when they follow an impact upon the person of the plaintiff."

> It is as if a magic circle were drawn about the person, and one who breaks it, even by so much as a cut on the finger, becomes liable for all resulting harm to the person, although it may be death ... One of the illustrations which runs through the English cases is that of the plaintiff with the "eggshell skull," who suffers death where a normal person would have had only a bump on the head, ….

*Id.*, quoted at 232 F.3d at 275.

Other circuits are in full agreement.  *See, e.g., Dunn v. Denk*, 54 F.3d 248, 250-51 (5th Cir. 1995), *reversed on other grounds* 79 F.3d 401 (5th Cir. 1996 )(en banc) (Eggshell plaintiff rule applies in §1983 cases; tortfeasor takes his victim and refusing to allow officers to escape liability for that would "leav[e] the weakest and most vulnerable members of society with the least protection from police misconduct."); *Darden v. City of Fort Worth,* 880 F.3d 722, 728 (5th Cir. 2018) (district court erred in dismissing case for inability to prove causation; fact that decedent had "focal coronary artery disease 'which can increase the likelihood of developing an arrhythmia during a struggle,' and chronic lung disease which 'can impede air exchange causing hypoxia and increase the risk of cardiac arrhythmia during exertion such as a struggle' not relevant because "[a]ccording to the eggshell skull rule, 'a tortfeasor takes his victim as he

---

[22] The Circuit Court approved of this statement made by the district court in its written opinion denying the officers' motion for new trial: "Defendant argues that, if rupture of the spleen did cause Decedent's death, he was not responsible because Decedent's preexisting sickness made him prone to that injury.  However, we find that Decedent's preexisting injury or weakness in the spleen, does not absolve Defendant of his liability.  It is well settled that in action for damages, the tortfeasor takes his victim as he finds him." *Id.* at 275.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON THE CAUSATION AND COLOR OF LAW ELEMENTS OF
THEIR FOURTH AMENDMENT EXCESSIVE FORCE CLAIM – 11
(2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6867764

finds him.'").[23]  *Taylor v. City of Milford*, 10 F.4th 800, 813 (7th Cir. 2021) (police officer applied restraint techniques to decedent who lost consciousness, and died ten days later in hospital; citing to eggshell skull rule circuit court affirms district court's denial of qualified immunity and rejects officer's contention that plaintiff could not establish causation because diabetes was a contributory cause of death); *Richman v. Sheahan*, 512 F.3d 876 (7th Cir. 2008) (due to coronary heart disease, "Richman did not have a normal life expectancy. But the force used against him by the swarm of deputies accelerated his death; how soon he would have died from causes unrelated to the use of that force is relevant only to damages.").

Moreover, as *Petro v. Town of West Warwick*, 889 F.Supp.2d 292, 345 (D.R.I. 2012) explicitly recognizes,[24] since an arrestee who dies while being taken into police custody is entitled to recover for pain and suffering endured before he died, the fact that the decedent has some pre-existing mental illness that makes him exceptionally fearful of police is relevant to the issue of damages even though the police officers had no knowledge of the arrestee's pre-existing fear of police.

Once the fact that Alexander Dold had an "enlarged heart" is recognized as the red herring that it is, nothing remains to create a triable issue on proximate causation.  Dold's heart stopped within minutes of his having been handcuffed.  There was an involuntary defecation while the physical struggle between Dold and the deputies was going on.  At the scene that

---

[23] The facts of *Darden* are remarkably similar to the facts of this case.  The Circuit Court's opinion states: "In arresting Darden, the officers allegedly threw him to the ground, tased him twice, choked him, punched and kicked him in the face, pushed him into a face down position, pressed his face into the ground, and pulled his hands behind his back to handcuff him."  *Id.* at 725.  Just like Alexander Dold, "Darden suffered a heart attack and died during the arrest." *Id.*

[24] "Under the familiar eggshell plaintiff rule, which is applicable to § 1983 suits, Defendants are liable for the full extent of Jackson's pain and suffering, regardless of whether it was exacerbated by Jackson's mental health issues." In the present case, Plaintiffs will present evidence that Dold's best friend was shot and killed by Shoreline police when Dold was about 20 years old, that Dold had had a deep fear of police, that his friend David had been killed by Shoreline police, and that Alex was afraid that one day he would be killed by police just as David was. See Jenn Dold, 56:2-9; 57:7-59:3; Vanessa Dold, 60:5-61:3, 94:8-12; Duncan, 38:21-40:19.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CAUSATION AND COLOR OF LAW ELEMENTS OF THEIR FOURTH AMENDMENT EXCESSIVE FORCE CLAIM – 12 (2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6867764

night, Deputy McCoy told another officer that "that guy shit all over me."[25]  It is not disputed that involuntary defecation often occurs when a person dies.  Thus, the medical evidence establishes that both deputies were in physical contact with Dold when he experienced brain death.[26] There is nothing that "intervened" between the deputies' use of force against Dold and Dold's death. Thus, even if one assumes that Dold's enlarged heart made him more susceptible to sudden cardiac arrest, there is no genuine issue of material fact as to proximate cause.

## IV.    CONCLUSION

For these reasons, Plaintiffs ask this Court to grant partial summary judgment on two of the elements of Plaintiff's Fourth Amendment §1983 claim for excessive force.  The Plaintiffs ask this Court to grant partial summary judgment on the elements of causation and acting under color of state law.  The only liability element that should be submitted to the jury is the objective reasonableness of the use of force.

DATED this 23rd day of March, 2022.

_s/ James E. Lobsenz_
James E. Lobsenz WSBA #8787
Attorneys for Plaintiffs
CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104
Phone: (206) 622-8020
lobsenz@carneylaw.com

---

[25] Daugherty, at 19:2-25; Statement of Sergeant Daniel Johnson, at 3-4 (Appendix B to Decl. Lobsenz).
[26] Sperry, at 115:12-117:25.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          **CARNEY BADLEY SPELLMAN, P.S.**
ON THE CAUSATION AND COLOR OF LAW ELEMENTS OF                          701 Fifth Avenue, Suite 3600
THEIR FOURTH AMENDMENT EXCESSIVE FORCE CLAIM – 13                Seattle, WA 98104-7010
(2:20-cv-00383-RAJ)                                                                            (206) 622-8020

DOL013-0001 6867764

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on this 23rd day of March, 2022, I electronically filed the foregoing

3 **PLAINTIFFS' MOTION PARTIAL SUMMARY JUDGMENT ON THE CAUSATION AND COLOR OF LAW ELEMENTS OF THEIR FOURTH AMENDMENT**

4 **EXCESSIVE FORCE CLAIM** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

5

6 **Attorneys for Defendant Snohomish County**

Ted Buck                       tbuck@freybuck.com

7 Delaney DiGiovanni             ddigiovanni@freybuck.com

Nick Gross                     ngross@freybuck.com

8

9 **Attorneys for Defendants Cody McCoy and Bryson McGee**

Shannon M. Ragonesi            sragonesi@kbmlawyers.com

10 Richard B. Jolley              rjolley@kbmlawyers.com

Sean M. Dwyer                  sdwyer@kbmlawyers.com

11

12 DATED this 23rd day of March, 2022.

13
                                          _s/ Deborah A. Groth_
14                                        Legal Assistant

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CAUSATION AND COLOR OF LAW ELEMENTS OF THEIR FOURTH AMENDMENT EXCESSIVE FORCE CLAIM – 14 (2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6867764