UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

JENNIFER DOLD, personal representative
of the estate of Alexander Dold; and KATHY
DUNCAN,

                Plaintiffs,

      v.

SNOHOMISH COUNTY, a political
subdivision of the State of Washington;
BRYSON McGEE; and CODY McCOY,

                Defendants.

NO. 2:20-cv-00383-RAJ

PLAINTIFFS' REPLY IN SUPPORT
OF MOTION TO DISQUALIFY MARK
KROLL

## I.    IRRELEVANT TESTIMONY

In their opposition to Plaintiff's motion to preclude Mark Kroll from testifying Defendants simply ignore the irrelevance of testimony about the use of tasers against people that are intoxicated and against people that police do not know have any mental illness.

**A.    Speculation as to drug or alcohol intoxication.**

Defendants concede that Alexander Dold was not intoxicated and was not under the influence of any drug. Nevertheless Defendants assert: "However, there *may* be instances where Dr. Kroll's discussion of Taser effects on intoxicated persons would be relevant and helpful, for example, as an analogy, example, or to give context to a study." Dkt. #81, at 9:12-14 (italics added). Defendants never explain *why* testimony about the use of tasers against people who are drunk or under the influence of a drug *would be relevant* to the use of tasers in

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO
DISQUALIFY MARK KROLL – 1
(2:20-cv-00383-RAJ)

DOL013-0001 6888395

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

this case against a person who everyone concedes was sober and not under the influence of any drug. Defendants assert that such testimony "may . . . be helpful . . . as an analogy." An analogy to what? Intoxicated people are not "analogous" to sober people. Neither do they explain why there would be any reason for Kroll to testify about a study of taser use where the people tased were intoxicated, and thus fail to explain why Kroll should be allowed to give "context" to an irrelevant study. Such testimony has no tendency at all to make a fact of consequence to the resolution of this case any more or less probable, and thus it has no relevance under Rule 401. As noted previously, Kroll offers speculation that maybe Dold was under the influence of some drug that escaped detection, but Defendants simply ignore this point. Clearly, Defendants want to invite the jury to engage in such speculation.

## B.  Confrontation with persons not known to have mental illness.

Kroll intends to testify about the fact that often police must interact with subjects that have mental illnesses, but the police are unaware of that fact. Plaintiffs object to such testimony because it is undisputed that in this case the deputies *did* know that Dold had a mental illness, therefore testimony about a nonexistent situation has no relevance. Defendants have not made any response to this relevance objection and therefore Kroll should be precluded from testifying about such a situation.

## II.  LACK OF QUALIFICATIONS

Plaintiffs pointed out that Kroll is an electrical engineer and not a medical doctor. By his own admission he has no expertise in either mental illness or in excited delirium, and yet he proposes to testify that Dold was experiencing excited delirium when he died. Defendants make no argument that Kroll is qualified to opine as to who has excited delirium; instead they simply ignore the issue.

Nor does Kroll have any experience in police work. He has no experience trying to arrest, handcuff, or restrain anyone, much less attempting to forcibly restrain a mentally ill

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO
DISQUALIFY MARK KROLL – 2
(2:20-cv-00383-RAJ)

DOL013-0001 6888395

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

person.  Yet he proposes to testify that tasing a mentally ill person has a greater risk of causing death than tasing a person who is not mentally ill.  Thus, he lacks the qualifications necessary to opine that tasing the mentally ill does not pose any increased risk of death.

Notably, Kroll's opinion is directly contrary to the training that Snohomish County actually gave to deputies McGee and McCoy.  For example, McGee took a 40-hour training class entitled, "Police Response to the Mentally Ill."[1]  This training teaches officers to know that thought disordered individuals "are at an increased risk for excited delirium and sudden death after a prolonged physical encounter."[2]  Moreover, his opinion is contrary to the training that Taser itself provides,[3] and which McGee and McCoy both took.  Since Kroll has no expertise in medicine, he is not qualified to give such opinions.

### III.     HELPFUL TO THE JURY

Kroll is admittedly qualified to testify to things like how much electricity is delivered when the taser is deployed in dart mode and there is a five second application of electrical current, or whether the amount of electricity that is delivered in a series of applications over ten, twenty, or thirty seconds, is enough by itself to trigger a heart attack.  But his opinion is not likely to be helpful to the jury and should thus be excluded under Rule 702.

Defendants argue that is not like a prospective juror "because Kroll is a hired expert witness, not a neutral factfinder." Dkt. #81, at 6:17-18.  True enough. But ordinarily, the only self-interest that an expert witness has is his interest in getting paid for his services, and ordinarily he gets paid only by the litigant that retains him (in this case Snohomish County) and that litigant retains him on a case-by-case basis.  If the expert, however, is also regularly paid

---

[1] See Appendix A to Declaration of Lobsenz (Discovery Document #_024595).

[2] Expert Report of W. Harmening, at pp. 18-19, citing the course McGee took. (Decl. Lobsenz, Appendix B).

[3] The taser training course developed by Axon Enterprises, which McGee and McCoy both took, explicitly states that multiple taser applications "extend . . . metabolic effects" and that they "may produce effects that could *increase the risk of sudden death*, including changes in: blood chemistry, blood pressure, respiration, heart rate and rhythm, adrenaline and stress hormones." Taser training materials, (Dold_022213-14) (Appendix C to Lobsenz Declaration) (Italics added).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO
DISQUALIFY MARK KROLL – 3
(2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6888395

to serve on the board of directors of a company that has a direct financial interest in *every* case that involves a death and the use of the company's sole product, then that expert not only has an ongoing bias in every such case he also has an ongoing legal duty not to give any testimony that might harm the company.

The County grossly mischaracterizes Plaintiffs' argument. The County characterizes the Plaintiffs as contending that Kroll has a fiduciary duty to "lie[] under oath about the scientific evidence of Taser risks." Dkt. #81, at 6:7-8. But Plaintiffs make no such argument. Plaintiffs have no way of knowing whether Kroll is lying or telling the truth and they certainly do not suggest that he has a duty to lie in order to protect Axon. But Plaintiffs do maintain that if Kroll testifies, then after the jury hears that he is a director and has fiduciary duties, and after this Court instructs the jurors as to what those fiduciaries are, the jurors will necessarily come to the conclusion that Kroll's opinion testimony is not helpful to them. The jurors will necessarily understand that while he may be telling the truth, he may also simply be lying because he is legally obligated to protect Axon from liability, from lost revenue, and from any kind of financial or legal harm. Faced with this dilemma, the jurors will inevitably come to the conclusion that Kroll's opinions are simply worthless. The jurors will recognize that since Kroll cannot escape his fiduciary duty to the company, they cannot tell whether he is being truthful or not, and therefore his opinion testimony will not have any probative value. Consequently, Kroll's proffered opinion testimony should be excluded under Rule 702 because it would not "help the trier of fact to understand the evidence or to determine a fact in issue." Moreover, even assuming, *arguendo*, that it has some minimal probative value, it should be excluded pursuant to Rule 403 because "its probative value is substantially outweighed by a danger of . . . confusing the issues, misleading the jury, undue delay [or] wasting time . . . ."[4]

---

[4] The County also asserts that "Kroll answered every question posed by Plaintiff's counsel." Dkt. #81, at 9:3. That is not true. Kroll refused to answer questions about what other organizations, besides Axon, pay him consulting fees. Plaintiffs believe that some law enforcement officers also pay him consulting fees, but Kroll refused to answer questions on that subject. Kroll, at 90. (Decl. Lobsenz, Appendix D)

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISQUALIFY MARK KROLL – 4 (2:20-cv-00383-RAJ)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DOL013-0001 6888395

## IV.    THE COUNTY MISREPRESENTS THE OPINIONS OF DRS. SELOVE AND SPERRY.

In its brief in opposition, the County misrepresents the opinions of both Dr. Selove and Dr. Sperry.  The expert who best fits the role of a "neutral" expert is Dr. Selove.  He wrote his autopsy report long before this lawsuit was filed, and he wrote in that report: "Other significant conditions contributory to death were schizophrenia and physical altercation with law enforcement officers *that included use of [a]conducted electrical weapon*." Dkt. 82-5 at 1.  The County acknowledges this unambiguous sentence and then proceeds to ignore the italicized phrase at the end of it.  Incredibly, the County states, "Dr. Selove did not conclude that Taser use *itself* caused or contributed to Dold's death."  Dkt. #81, at 3:7-8.

But actually, as a matter of fact, he did.  That's what he said.  He said one of the significant conditions "contributory to death" was "use of [a] conducted electrical weapon." The County puts the word "itself" in italics.  Apparently, the County wishes to argue that because the use of a taser was not the *only* thing that caused Dold's death it is not important. Perhaps the County intends to try to argue that to the jury (although Plaintiffs submit such argument would be improper because it is contrary to law).  But there is no blinking the fact that Dr. Selove unambiguously said that taser use *was* a contributory cause of Dold's death.

The County asserts that Plaintiffs "blatantly twist" the words of Dr. Selove's report. The County seems to argue that the words "that included" which precede the words "use of a conducted electrical weapon" demonstrate that the reference to use of a taser was merely surplusage of some kind.  According to the County, although Dr. Selove meant to say that the "physical altercation with law enforcement" was a significant contributory cause of Dold's death, he did not mean to say that the use of a conducted electrical weapon was a significant contributory cause.  But the words "that included" show that Dr. Selove clearly did mean to say that.  If Dr. Selove had meant to say that everything in the physical altercation *except* the use

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO
DISQUALIFY MARK KROLL – 5
(2:20-cv-00383-RAJ)

DOL013-0001 6888395

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

of a taser was a significant contributory cause then he would have used the word "excluded," not the word "included."

Similarly, the County misrepresents Dr. Sperry's testimony. The County ignores the word "direct" in his statement that the taser "did not directly cause his death." Moreover, the County fails to mention what Dr. Sperry said regarding how use of the taser lead to a prolonged physical struggle which led to increased acidosis which then lead to a sudden cardiac arrest. Thus, Dr. Sperry clearly opined that use of the taser was an *indirect* cause of death.[5]

Finally, as Plaintiffs have pointed out elsewhere (see Dkt. #61, at 4-8), virtually all the rest of the defense experts are in agreement with Dr. Sperry that metabolic acidosis *was* a cause of Dold's sudden cardiac arrest. Thus, the defense experts (as well as Dr. Adams) who *are* medical doctors and who *do* have expertise in physiology and in metabolic acidosis, agree with Dr. Sperry, that the taser caused Dold to continue to struggle vigorously, to produce more lactic acid, to an increase in the amount of carbon dioxide in his blood, and finally to cardiac arrest.[6]

## V.     CONCLUSION

For these reasons, Plaintiffs ask the Court to grant their Rule 702 motion and to preclude Kroll from giving any testimony because his opinion testimony would not be helpful to the jury given the existence of his fiduciary duties to Axon. If, however, the Court allows Kroll to testify, Plaintiffs ask the Court to prohibit from testifying about (1) police use of tasers against persons who are intoxicated or under the influence of drugs, (2) police use of tasers against mentally ill persons, or (3) about the syndrome referred to as "excited delirium."

---

[5] Sperry, at 102 ("Tasers are painful, and pain produces adrenalin, which then accentuates the production of lactic acid and enhances the oxygen debt that is present. So you don't kill someone directly with a Taser, but factored into everything else, the acidosis increases. So -- excuse me -- ultimately there is a breaking point that is reached that will cause sudden death just from the restraint and the intense physical action, as well as the Taser application, all combined together, without asphyxia." (Decl. Lobsenz, Appendix E).

[6] Sperry at 83 ("Q. The cumulative effect of the discharges would be that that would contribute to stress that ultimately creates acidosis? A. Basically, yes. . .").

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO
DISQUALIFY MARK KROLL – 6
(2:20-cv-00383-RAJ)

DOL013-0001 6888395

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DATED this 8th day of April, 2022.

_s/ James E. Lobsenz_
James E. Lobsenz WSBA #8787
Randy J. Johnson WSBA #50129
Attorneys for Plaintiffs
CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104
Phone: (206) 622-8020
lobsenz@carneylaw.com
johnson@carneylaw.com

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO
DISQUALIFY MARK KROLL – 7
(2:20-cv-00383-RAJ)

DOL013-0001 6888395

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

# CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of April, 2022, I electronically filed the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISQUALIFY MARK KROLL** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Defendant Snohomish County**
Ted Buck                    tbuck@freybuck.com
Delaney DiGiovanni          ddigiovanni@freybuck.com
Nick Gross                  ngross@freybuck.com
Evan Bariault               ebariault@freybuck.com

**Attorneys for Defendants Cody McCoy and Bryson McGee**
Shannon M. Ragonesi         sragonesi@kbmlawyers.com
Richard B. Jolley           rjolley@kbmlawyers.com
Sean M. Dwyer               sdwyer@kbmlawyers.com

DATED this 8th day of April, 2022.

_s/ Deborah A. Groth_
Legal Assistant

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO
DISQUALIFY MARK KROLL – 8
(2:20-cv-00383-RAJ)

DOL013-0001 6888395

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020