1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JENNIFER DOLD, ET AL.,

               Plaintiffs,

    v.

SNOHOMISH COUNTY, ET AL.,

               Defendants.

CASE NO. 2:20-cv-00383-JHC

ORDER RE: MOTION TO EXCLUDE OR
LIMIT EXPERT TESTIMONY

## I

### INTRODUCTION

This matter comes before the Court on Plaintiffs' "Motion to Exclude Defense Experts Ovens and Spurling and to Limit Testimony of Expert Hicks." Dkt. # 73; *see also* Dkt. # 109. Defendants oppose the motion. Dkt. # 93. The Court GRANTS the motion in part and DENIES it in part. The Court will permit Tom Ovens and Russ Hicks to testify but will restrict the scope of their testimony as discussed below. The Court will exclude Ryan Spurling's testimony.

1

2

## II

### DISCUSSION

3

4

Plaintiffs ask the Court to exclude two defense expert witnesses, Tom Ovens and Ryan

5

Spurling.  Dkt. # 73.  Plaintiffs concede that a third defense expert, Russ Hicks, may testify, but

6

seek to limit the scope of his testimony.  *Id.*  Plaintiffs argue that each expert offers

7

impermissible legal and factual conclusions about the interaction between the deputies and Mr.

8

Dold.  For example, Plaintiffs object to expert testimony that opines about what a "reasonable

9

officer" would do and whether the deputies used "reasonable force."  They claim that these

10

questions should be reserved for the jury and are not proper subjects for an expert witness.

11

Plaintiffs also contend the experts make improper credibility determinations when they accept

12

the deputies' version of events, embracing the deputies' narrative while ignoring evidence to the

13

contrary.  Finally, Plaintiffs contend that the three police practice expert witnesses would be

redundant and duplicative.

14

A.      Legal Standard

15

An expert may generally testify about the procedures, policies, and standards used by law

16

enforcement.  *See Davis v. Mason Cnty.*, 927 F.2d 1473, 1484–85 (9th Cir. 1991) (testimony of

17

police practices expert was admissible); *Fontana v. City of Fed. Way*, 2014 WL 202104, at *3

18

(W.D. Wash. Jan. 17, 2014) (noting that courts "generally allow[] expert testimony regarding the

19

appropriateness of police conduct." (citing *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir.

20

2005))); *M.H. v. Cnty. of Alameda*, No. 11-CV-02868-JST, 2015 WL 54400 (N.D. Cal. Jan. 2,

21

2015) (noting that experts "may opine as to . . . generally accepted law enforcement standards,

22

custom, or practice").[1]

23

24

---

[1] However, as Plaintiffs note, Dkt. # 109 at 3, there does not appear to be a Ninth Circuit case discussing the admissibility of police practice expert testimony in detail.

ORDER RE: MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY - 2

But "[w]hile experts may permissibly opine as to standard law enforcement practices and whether defendants' conduct is in accord with those practices, they may not offer legal conclusions that are solely within the Court's or the fact-finder's province." *Fontana v. City of Auburn*, No. C13-0245-JCC, 2014 WL 4162528, at *6 (W.D. Wash. Aug. 21, 2014) (citing *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)). "[A]n expert witness cannot give an opinion as to [their] *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter*, 373 F.3d at 1016. "Such an opinion does not aid the jury in making its decision; it merely attempts to substitute the expert's judgment for that of the jury[] or . . . the Court." *City of Auburn*, 2014 WL 4162528, at *6. In the excessive force context, courts have held that an expert "may not express [their] opinion in terms of whether defendants 'violated plaintiff's Fourth Amendment rights,' used 'excessive force,' or used force that is consistent with a finding of excessive force. Those are impermissible legal conclusions." *City of Fed. Way*, 2014 WL 202104, at *3. Accordingly, an expert should generally avoid terms that have a "specialized meaning in law" or otherwise "attempt to instruct the jury on the law." *United States v. Diaz*, 876 F.3d 1194, 1198–99 (9th Cir. 2017). Courts have recognized in excessive force cases that "[a] fine line separates opinions on ultimate issues which are proper from those which are improper, and here the distinction turns on the helpfulness to the trier of fact in view of the specific circumstances of the case." *Galindo v. Tassio*, No. C13-00105 HRL, 2014 WL 12693525, at *4 (N.D. Cal. June 19, 2014).

B.     Expert Testimony of Ovens

The Court agrees with Plaintiffs that Tom Ovens's report contains numerous inadmissible opinions. *See* Dkt. # 74 at 5–24 (Ovens report). For example, the report states that "a reasonable officer would believe that the defendant deputies had the legal authority, exigent circumstances, to enter the residence," that "a reasonable officer would believe that the plaintiff was actively

resisting" arrest, that "a reasonable officer" would not have issued a taser warning, that a "reasonable officer would believe that it was reasonable for Deputy McGee to push Dold onto the bed . . . based upon the totality of circumstances," that "a reasonable officer" would have transitioned from striking tactics to use of a taser, that a "reasonable officer would believe that it was reasonable for Deputy McCoy to use his knee to pin Dold's head to the floor," that a "reasonable officer" would deploy a LVNR chokehold under the circumstances, and more. *Id.* at 10–15.

These opinions—and others like them—are inadmissible. In the guise of expert testimony, these opinions seek to do the jury's job for it. *See Diaz*, 876 F.3d at 1197 ("[W]hen an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)). A jury, not an expert, must decide whether the deputies deployed reasonable force under the totality of circumstances. *See, e.g., Garza v. City of Los Angeles*, 2017 WL 4162203, at *5 (C.D. Cal. Sept. 18, 2017) ("[C]onclusions from police officers or experts regarding whether [an officer] acted with excessive force would inappropriately infringe on the province of the jury."); *Cty. of Alameda*, 2015 WL 54400, at *2 ("[C]ourts preclude expert testimony as to what is [r]easonable, in the context of whether excessive force was employed." (citation and quotation marks omitted)); *Galindo*, 2014 WL 12693525, at *4 (finding that an expert's opinion about the reasonableness of the officer's use of force "constitutes a legal conclusion that risks usurping the jury's role"); *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (improper for expert to testify that officer's use of force was not "justified under the circumstances," not "warranted under the circumstances," and "totally improper"). Similarly, a jury, not an expert, must decide whether the deputies had "probable cause" to arrest Mr. Dold. *See Torres v. Los Angeles*, 548 F.3d 1197, 1214 n.11 (9th Cir. 2008)

1   (district court abused its discretion when it allowed defense expert to testify that there was

2   probable cause to arrest the plaintiff).  The risk of usurping the jury's role is particularly acute

3   when, as here, the expert seeks to testify using terms with "specialized meaning in law."[2]  *Diaz*,

4   876 F.3d at 1199; *see also Galindo*, 2014 WL 12693525, at *4 (excluding expert testimony

5   because "'reasonable' has an eminently significant legal connotation such that Clark's opinion as

6   to the reasonableness of Tassio's entry or use of force constitutes a legal conclusion that risks

7   usurping the jury's role.").

8          Granted, the Federal Rules of Evidence do not prohibit an expert from testifying about an

9   "ultimate issue" in a case.  Fed R. Evid. 704(a); *Mukhtar v. California State Univ.*, 299 F.3d

10  1053, 1065 n.10 (9th Cir. 2002) ("It is well-established, however, that expert testimony

11  concerning an ultimate issue is not per se improper."), *overruled on other grounds by Est. of*

12  *Barabin v. Asten Johnson*, 740 F.3d 457, 467 (9th Cir. 2014) (en banc).  But while "ultimate

13  issue" testimony is not per se impermissible, "an expert witness cannot give an opinion as to

14  [their] *legal conclusion*, i.e., an opinion on an ultimate issue of law."  *Hangarter*, 373 F.3d at

15  1016.  That is what Ovens tries to do here.  And as the Advisory Committee Notes on the Federal

16  Rules make clear, "[t]he basic approach to opinions, lay and expert, . . . is to admit them when

17  helpful to the trier of fact."  Fed. R. Evid. 704 advisory committee's note.  Here, it would not

18  help the jury to be told that—in comparison to constitutional standards—the deputies acted

19  reasonably.  This does not help the jury in determining whether the conduct violated the

20

21          [2] The Court recognizes that the use of legal terminology is not dispositive when determining
    admissibility, and that testimony "couched in legal terms" is not per se impermissible.  *Hangarter*, 373
22  F.3d at 1017 (citation omitted).  The Court reads *Diaz*, *Hangarter*, and similar cases to suggest that the
    use of legal terminology is a factor to consider when deciding whether an expert's testimony improperly
23  intrudes into the role of the jury.  Unlike in *Hangarter*, however, the law referenced in Ovens's expert
    report—the Fourth Amendment's "reasonableness" standard—is not "ancillary to the ultimate issue."  *Id.*
    The reasonableness of the deputies' conduct *is* the ultimate issue in this case.  And unlike in *Diaz*, the
24  terms used in Ovens's report *do* "have a specialized meaning in law."  876 F.3d at 1199.

1    Constitution; it simply "tell[s] the jury what result to reach," which "does not *aid* the jury in

2    making a decision." *Diaz*, 876 F.3d at 1197 (citation omitted).  The jury can evaluate the

3    reasonableness of the deputies' conduct without an expert telling it whether the conduct was (or

4    was not) reasonable.

5         Accordingly, Ovens may not testify about his belief that the deputies acted "reasonably,"

6    that they employed a "reasonable" amount of force, that the deputies had probable cause to arrest

7    Mr. Dold, or similar opinions.  *See Morales v. Fry*, No. C12-2235-JCC, 2014 WL 12042563, at

8    *3 (W.D. Wash. Mar. 25, 2014) (holding that the expert "should not indicate, in any way,

9    whether any conduct was 'reasonable under the circumstances,' 'objectively reasonable,' or

10   'justified' under the circumstances.").

11        While much of Ovens's report contains inadmissible opinions, the Court concludes that

12   the report also contains admissible opinions.  For example, Ovens's report states that "[t]he Taser

13   techniques used by Deputy McCoy were consistent with the training that I have received and the

14   generally accepted practices of officers at the time of the incident."  Dkt. # 74 at 12.  The report

15   compares tasers to other forms of force, which could help a jury determine whether the deputies'

16   tactical response matched the needs of the situation.  *Id.*  The report also states that "[s]triking to

17   the body like Deputy McGee did is consistent with the training standards in Washington State,"

18   and that a certain handcuffing practice is a "commonly taught and accepted method" for

19   controlling subjects.  Dkt. # 74 at 13, 17.  These opinions do not discuss the reasonableness of

20   the deputies conduct.  Rather, they "permissibly opine as to standard law enforcement practices

21   and whether defendants' conduct is in accord with those practices."  *City of Auburn*, 2014 WL

22   4162528, at *6.

23        Plaintiffs nevertheless argue that Ovens's testimony is inadmissible because he did not

24   identify a *specific* set of standards (say, a written or published set of standards).  Dkt. # 73 at 4.

ORDER RE: MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY - 6

But even without reference to a particular set of standards, a qualified expert is still likely to know—based on their own experiences—what practices are commonplace and whether the deputies' conduct conformed to those common practices.  The Court believes that this information could help a jury.  *Galindo*, 2014 WL 12693525, at *4 (observing that the "helpfulness [of the information] to the trier of fact" helps distinguish admissible expert opinions from inadmissible ones).  Plaintiffs may challenge Ovens's failure to identify a particular standard on cross-examination.  And a jury may very well decide that this testimony deserves diminished weight as a result of this omission.  But the Court concludes that the failure to name a particular source for the police standards is not enough to exclude the testimony.

In sum, the Court will allow Ovens to testify but will not allow him to testify about the deputies' reasonableness, the reasonableness of the force used, whether the deputies had probable cause to arrest Mr. Dold, or any other opinions of that nature.[3]  *Cf. Morales*, 2014 WL 12042563, at *3 (declining a request to bar the expert "from testifying wholesale," but still limiting the scope of the expert's opinion).

B.      Expert Testimony of Spurling

Plaintiffs seek to exclude Ryan Spurling's testimony because his report contains inadmissible conclusions about the reasonableness of the deputies' conduct.  *See* Dkt. # 74 at 26–34 (Spurling's report).  For example, the report states that "it is my opinion that the Deputies and Officers involved used reasonable levels of force," that "[t]he totality of the circumstances would lead a reasonable officer to believe their life was in imminent danger," that "deputy McGee and Deputy McCoy along with the other officers acted reasonably" and more.  Dkt. # 74 at 34.  Most

---

[3] As a general note, to the extent that this order does not address a particular evidentiary challenge, or to the extent that the parties lack sufficient clarity about the scope of this order, the parties may reassert their objections in a motion in limine.

of Spurling's report is spent applying the factors announced in *Graham v. Connor*, 490 U.S. 386 (1989), to the present case: The report opines that based on the severity of the crime committed, the immediate threat to officer and bystander safety, and Mr. Dold's alleged resistance to arrest, the deputies' use of force was objectively reasonable.  And it explains what the "legal standard of reasonableness" requires.  Dkt. # 74 at 28.

As discussed above, such opinions are inadmissible.  Opinions about the reasonableness of the deputies' conduct usurps the role of the jury; opinions about the "legal standard of reasonableness" usurps the role of the Court.

Unlike Ovens's report, however, there is very little in Spurling's report that *is* admissible. Most of the report contains Spurling's own (inadmissible) opinions about how the *Graham* factors apply here, which crimes Mr. Dold allegedly committed, and whether the deputies' use of force was justified.  While Spurling's report may contain *some* limited admissible material,[4] the Court still believes that Spurling's testimony is unnecessary.  First, Spurling's testimony would be duplicative of testimony by Ovens and Hicks.  *See* Fed. R. Evid. 403 (allowing exclusion of relevant evidence when admission would "needlessly present[] cumulative evidence").  Second, to the extent that the report contains admissible opinions (such as the statement that "[o]fficers are trained that making a physical arrest is dangerous," Dkt. # 74 at 29), those concepts are within the common knowledge of the jury such that no expert is necessary.  Third, Spurling is the *County*'s "use of force" expert, as Defendants' response brief makes clear.  Dkt. # 93 at 11– 12.  There does not appear to be any cause of action remaining against the *County* that directly hinges on whether the deputies applied appropriate force.  The Court believes that any need for such testimony can be provided by Ovens or Hicks.

---

[4] For example, the report's comment that "[o]fficers are trained that making a physical arrest is dangerous" is arguably admissible.  Dkt. # 74 at 29.

Accordingly, the Court excludes Spurling's testimony.

D.     Expert Testimony of Hicks

Plaintiffs concede that defense expert Russ Hicks may testify but seek to limit the scope of his testimony.  Dkt. # 73 at 8–10; Dkt. # 74 at 36–58 (Hicks report).  They recognize that portions of Hicks's report discuss police standards and how the deputies' conduct aligned with those standards.  For example, the report discusses Snohomish County Sheriff's Office policies on the use of tasers, as well as the training materials disseminated by the company that supplies the County with its tasers.  *See* Dkt. # 74 at 53–55.  But Plaintiffs object that the report also contains conclusions about the reasonableness of the use of force.  As discussed, this type of opinion is not permissible.

Accordingly, Hicks may testify, but will be subject to the same restrictions as those placed on Ovens.  Hicks may not testify as to the deputies' reasonableness, the reasonableness of the force used, whether the deputies had probable cause to arrest Mr. Dold, or any other opinions of that nature.

E.     Testimony Purportedly Resolving Disputes of Fact

Plaintiffs contend that the expert reports are inadmissible because they adopt the version of events as provided by the deputies, without acknowledging that there are disputes of fact about what happened the night of Mr. Dold's death.  Dkt. # 73 at 10–11.  For example, the parties dispute whether Mr. Dold punched the deputies, but the experts take as given that Mr. Dold punched the deputies.  Plaintiffs argue that the experts impermissibly made credibility determinations by believing the deputies, disbelieving Ms. Duncan, and ignoring other circumstantial evidence.  Defendants respond that the experts' factual conclusions are "reasonable interpretations of the evidence" and that the experts do not "purport to testify based on personal observations."  Dkt. # 93 at 9.  They add that "Plaintiffs are free to cross-examine

1    the experts on the conflicting evidence," and that "an expert's opinion is not made inadmissible

2    because it relies on witness accounts." *Id.*

3            To be sure, the experts provide definitive statements about the nature of the interaction.

4    The statements are not couched in hypothetical language (e.g., "assuming these facts are true, I

5    opine as follows"), and they lack any acknowledgment that the facts are disputed.  To the extent

6    that the reports claim to opine on what actually happened the night of Mr. Dold's death, they are

7    insufficient to justify such an opinion: They do not describe what facts enable them to reach such

8    a conclusion or grapple with the conflicting evidence.  *Cf. Jimenez v. Sambrano*, No. 04CV1833-

9    L(PCL), 2009 WL 2382622, at *2 (S.D. Cal. July 31, 2009) ("Expert testimony is not

10   appropriate to determine how this incident unfolded. This determination in the present case

11   depends on witness credibility. Judging the credibility of witnesses is the jury's function.").

12           But the Court is not comfortable ruling on this issue without additional briefing: In

13   particular, the Court would like to know how courts handle expert testimony when, as here, there

14   are numerous facts in dispute that affect the expert's testimony.  The Court will reconsider this

15   issue when it considers any motions in limine (which will provide an opportunity for the parties

16   to more fully brief the issue).

17                                              **III**

18                                          **CONCLUSION**

19           Plaintiffs' motion to exclude or limit the testimony of defense experts (Dkt. # 73) is

20   GRANTED in part and DENIED in part.  The Court will permit Tom Ovens and Russ Hicks to

21   testify but will restrict the scope of their testimony.  The Court will exclude Ryan Spurling's

22   testimony.

23

24

1

Dated this 5th day of January, 2023.

2

_John H. Chun_
_____

3

John H. Chun
United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24