UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| JENNIFER DOLD, personal representative of the estate of Alexander Dold; and KATHY DUNCAN,<br><br>          Plaintiffs,<br><br>    v.<br><br>SNOHOMISH COUNTY, a political subdivision of the State of Washington; BRYSON McGEE; and CODY McCOY,<br><br>          Defendants. | NO. 2:20-cv-00383-JHC<br><br>DECLARATION OF JAMES E. LOBSENZ IN SUPPORT OF PLAINTIFFS' MOTIONS IN LIMINE |

I, JAMES E. LOBSENZ, do hereby declare under penalty of perjury under the laws of the United States of America that the following facts are true and correct:

1.   I am counsel for the Plaintiffs. I have personal knowledge of the facts set forth here.

2.   Attached to this declaration as **Appendix A** is a true and correct copy of a page of the CAD Radio Communication Detail Report.

3.   Attached to this declaration as **Appendix B** is a true and correct copy of the Toxicology Test Report dated April 17, 2017.

4.   Attached to this declaration as **Appendix C** are true and correct copies of Pages 2-3 of the Transcript of the 911 Call.

5.   Attached to this declaration as **Appendix D** are true and correct copies of excerpts from the deposition of Kathy Duncan.

DECLARATION OF JAMES E. LOBSENZ IN SUPPORT OF PLAINTIFFS' MOTIONS IN LIMINE – 1 (2:20-cv-00383-JHC)

DOL013-0001 7143016

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

6. Attached to this declaration as **Appendix E** are true and correct copies of excerpts from the deposition of Jennifer Dold.

DATED this 9th day of February, 2023.

_____s/ James E. Lobsenz_____
James E. Lobsenz WSBA #8787
Attorneys for Plaintiffs
CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104
Phone: (206) 622-8020
lobsenz@carneylaw.com

DECLARATION OF JAMES E. LOBSENZ IN SUPPORT OF
PLAINTIFFS' MOTIONS IN LIMINE – 2
(2:20-cv-00383-JHC)

DOL013-0001 7143016

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of February, 2023, I electronically filed the foregoing **DECLARATION OF JAMES E. LOBSENZ IN SUPPORT OF PLAINTIFFS' MOTIONS IN LIMINE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Defendant Snohomish County**
Ted Buck                    tbuck@freybuck.com
Delaney DiGiovanni          ddigiovanni@freybuck.com
Nick Gross                  ngross@freybuck.com
Evan Bariault               ebariault@freybuck.com

**Attorneys for Defendants Cody McCoy and Bryson McGee**
Shannon M. Ragonesi         sragonesi@kbmlawyers.com
Richard B. Jolley           rjolley@kbmlawyers.com
Sean M. Dwyer               sdwyer@kbmlawyers.com

DATED this 9th day of February, 2023.

_s/ Deborah A. Groth_
Legal Assistant

DECLARATION OF JAMES E. LOBSENZ IN SUPPORT OF
PLAINTIFFS' MOTIONS IN LIMINE – 3
(2:20-cv-00383-JHC)

DOL013-0001 7143016

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

# APPENDIX A

# Call For Service Detail Report - CFS 910

| Address | 12014 221ST ST SE, Snohomish | | | | |
|---|---|---|---|---|---|
| Common Name | | | | | |
| Custom Layer | SO3830 | Census Tract | 521.12 | | |
| Beat | C4 | Quadrant | AF0120 | District | 477H1 |
| Caller Name | DUNCAN, KATHY | Call Phone | 3605510614 | Call Taker | SP0291 |
| Create Date | 3/21/2017 9:17:32 PM | Clear Date | 3/22/2017 8:14:09 AM | Nature Of | |

## Agencies

| Call Type | Status | Priority | Dispatcher | Created Date |
|---|---|---|---|---|
| HELP | 1 | 1 | SP0291 | 3/21/2017 9:17:32 PM |
| MEDX | 1 | 1F | SP0337 | 3/21/2017 9:56:45 PM |

## Narratives

| Date Time | Description | User | Machine |
|---|---|---|---|
| 3/21/2017 9:18:36 PM | CC, MALE VERBAL AND PHYSICAL | Davies,Dana | |
| 3/?? 17 9:19:28 PM | SUS IS MENTAL AND OFF MEDS, RP REQ SILENT APPROACH | Davies,Dana | |
| 3/21/2017 9:19:45 PM | SUP GVN | Quint,R.L. | |
| 3/21/2017 9:20:08 PM | SUS- F/ALEXANDER, L/DOLD, 29 YO, | Davies,Dana | |
| 3/21/2017 9:21:28 PM | SUS LS IN HOUSE, RP LEFT THE HOUSE IN ORDER TO CALL, RP THINKS HE WILL TAKE OFF IF HE KNOWS RP CALLED | Davies,Dana | |
| 3/21/2017 9:22:41 PM | SUP GVN | Quint,R.L. | |
| 3/21/2017 9:23:07 PM | RP IS GOING BACK TO THE HOUSE | Davies,Dana | |
| 3/21/2017 9:24:03 PM | SUS VEH-WHI PLYMOUTH NEON, RP VEH-BLU YARIS | Davies,Dana | |
| 3/21/2017 9:25:33 PM | RP WANTS HIM TAKEN IN FOR PHYCH EVAL, SUS-WMA TALL, SHAVED HEAD, TEE, SWEATS | Davies,Dana | |
| 3/21/2017 9:26:11 PM | SUP GVN | Quint,R.L. | |
| 3/21/2017 9:26:44 PM | LR291 | Davies,Dana | |
| 3/21/2017 9:53:01 PM | AIR CLOSED, TAZER DEPLOYED | Porter,Krysta | |
| 3/21/2017 9:54:48 PM | SEND US SOME HELP | Porter,Krysta | |
| 3/21/2017 9:56:16 PM | CODE 3- BCST ALL RADIOS | Porter,Krysta | |
| 3/21/2017 9:56:28 PM | WSP ER | Baertschiger,Sara | |
| 3/21/2017 9:56:29 PM | RP CALLING FROM 12027 221ST ST SE, HEARD SOMEONE SAY "SHOW ME YOUR HANDS" | Sawyer,Myranda | |
| 3/?? 7 9:56:45 PM | **aid stage*** | Dotson,Kate | |
| 3/2.. .17 9:56:55 PM | ***AID TO STAGE | Fenter,Jenifer | |
| 3/21/2017 9:57:27 PM | HURRY UP | Porter,Krysta | |
| 3/21/2017 9:58:20 PM | THIS RP ANNETTE, 425 877 8220 | Sawyer,Myranda | |
| 3/21/2017 9:58:56 PM | SOUTH COUNTY LEVEL 2 | Spromberg,Amy | |
| 1/21/2017 9:59:18 PM | THIS RP ADV SOMEONE WALKED | Sawyer,Myranda | |

# APPENDIX B



**TOXICOLOGY LABORATORY**

**WASHINGTON STATE PATROL**

2203 Airport Way South Suite 360 Seattle, WA 98134
(206) 262-6100  FAX No. (206) 262-6145

### TOXICOLOGY TEST REPORT

| | |
|---|---|
| **Attention:** | Dr. Stanley Adams |
| **Agency:** | Snohomish Co Medical Examiner |
| **Address:** | 9509 29th Ave W |
| | Everett, WA 98204 |

**Tox Case #:** ST-17-03739   **Case Type:** Death Investigation   **Report Date:** 4/17/2017

**Agency Case #:** 17SN0482   **Subject Name:** Alexander W. Dold

**Evidence:** The following evidence was submitted to the Laboratory by Danielle Renshaw of the Snohomish Co Medical Examiner on 3/29/2017 via USPS-Certified Mail:

(1)  ST-17-03739-A: VGray, Blood - Peripheral

## Volatile Analysis Results:

**ST-17-03739-A: Blood - Peripheral**

ST-17-03739-A was tested by Headspace - Gas Chromatography for the presence of acetone, ethanol, isopropanol, and methanol on 04/10/2017. The following result was obtained:

**None Detected**

## Drug Analysis Results:

**ST-17-03739-A: Blood - Peripheral**

ST-17-03739-A was tested by Enzyme Multiplied Immunoassay Technique (EMIT) for the presence of amphetamines, barbiturates, benzodiazepines, cannabinoids, cocaine metabolite, and opiates on 04/10/2017. The following result(s) was obtained:

**None Detected**

ST-17-03739-A was tested by Gas Chromatography/Mass Spectrometry for the presence of basic drugs and metabolites on 04/10/2017. The following result(s) was obtained:

**None Detected**

## COMMENTS

*All testing was performed by the Forensic Scientist listed below except as otherwise indicated. The Forensic Scientist has technically reviewed all relevant pages of testing documentation in the case record.*

DOLD-BL-000747



**Examined by:**

Asa Louis, BSc
Forensic Scientist 3

Date: 20170917

**Reviewed by:**

Reviewer
Date: 4/19/17

DOLD-BL-000748

# APPENDIX C

<u>SM17-6 911 CALLS AND RADIO TRAFFIC– Case #SM17-6</u>

| | |
|---|---|
| SNOPAC | And that's what, SE? |
| CALLER | Yes. |
| SNOPAC | Okay; and is that a house or a... |
| CALLER | You go up Echo Lake... |
| SNOPAC | Is that a house or an apartment? |
| CALLER | It's a house. |
| SNOPAC | And what's happening there? |
| CALLER | Well, my...my adult son lives with me, he has schizophrenia and he hasn't taken his medicine since November or December and he was tossing around the house tonight and he hasn't done that before so that's...he just went over the line and he... |
| SNOPAC | So he's verbal? |
| CALLER | I have a fat lip and he yanked the landlord...or he...the lanyard off my neck and he was trying to get my phone and I think that's when he hit me and he had his arms cocked... |
| SNOPAC | Any weapons involved? |
| CALLER | Um, no.  I...I have a gun but it's with me and uh... |
| SNOPAC | Is it secured? |
| CALLER | Pardon? |
| SNOPAC | Is it secured? |

Dold_008613

CALLER          Yes, it's zipped up and it will be locked in…in the car.  He won't be violent with them.  He's afraid of police because when he…a friend of his in high school was killed by a policeman so he was…

SNOPAC          And…what is the…

CALLER          And I want no lights, no sirens.  I just want them to go and talk to him and then he has to go to the hospital 'cause I'm…I'm…I…I was so afraid.  I mean, he spit on me, he flipped my recliner upside down, I was upside down, uh, he hit me in the lip, um, and he…he's…he's never done that before.

SNOPAC          What's his first name?

CALLER          Alexander; and he's 29.  He's like 6 feet tall.

SNOPAC          What's his last name?

CALLER          Dole, D-O-L-D.

SNOPAC          D.

CALLER          He's…he's been in um, the hospital twice for this; not for being violent but for schizophrenia.  Usually he's just been…

SNOPAC          Where…where is he right…where is he right now?

CALLER          He's…he's at our house and I just came up to the store pretending like I'm coming to the store so I can call and then I'll…I'll go back.

SNOPAC          Well, I want for you to do whatever you need to do to keep yourself safe.  So are you injured?  Do you need an aid car?

CALLER          Oh no, no, no.

Dold_008614

# APPENDIX D

UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

------------------------------------------------------------

JENNIFER DOLD, personal representative )
of the estate of Alexander Dold; and  )
KATHY DUNCAN, mother of Alexander Dold,)
                                       )
            Plaintiffs,                )
                                       )
     vs.                               )
                                       ) NO. 2:20-CV-00383
SNOHOMISH COUNTY, a political          )
subdivision of the State of            )
Washington; BRYSON MCGEE; and          )
CODY MCCOY,                            )
                                       )
            Defendants.                )

------------------------------------------------------------

REMOTE

VIDEO DEPOSITION UPON ORAL EXAMINATION OF

KATHY DUNCAN

------------------------------------------------------------

9:39 a.m.

January 26, 2022

Seattle, Washington

STENOGRAPHICALLY REPORTED BY:

JANE L. WORDEN, RPR, CCR No. 2726

1   when he thought he heard people talking?

2       A.   When he worked at the golf course.

3       Q.   What happened then?

4       A.   Well, they had to go to work early to have the

5   greens and stuff clean before the golfers came.  And so it

6   was dark, and he asked his boss if he could come in later.

7           MR. LOBSENZ:  Shannon, can we take a moment?

8           MS. RAGONESI:  Yeah, that's fine.  Let's take a

9   quick break.

10          THE VIDEOGRAPHER:  Going off record.

11                  The time is 10:13.

12                      (A recess was taken.)

13          THE VIDEOGRAPHER:  We're back on the record.

14                  The time is 10:20.

15          MS. RAGONESI:  Thank you.

16      Q.   Ms. Duncan, can you please continue with your

17  answer.

18          MR. LOBSENZ:  Can you tell us the question again.

19  I think she was done, but what was the question?

20          MS. RAGONESI:  She was telling us about the

21  incident that happened with Alex at the golf course.

22          THE WITNESS:  Okay.  He -- they came in early, and

23  it was getting -- it was dark.  And he asked his boss if

24  he could come in later because there were people out in

25  the bushes with bows and arrows.  And his boss let him go.

1 He knew he had a mental illness.

2     Q.  BY MS. RAGONESI:  Do you know how his boss at the

3 golf course responded when he made that request?

4     A.  Please repeat.

5     Q.  Sure.  And also, Ms. Duncan, I know that you're

6 trying really hard to hear.  But when you lean forward, we

7 lose half of your face in the video.

8     A.  Sorry.

9     Q.  Not a problem.  But I don't know, we may need to

10 adjust the screen a little bit.  We'll just try to work

11 through it, and I'll remind you.  Oh, I have to remember

12 my question.

13         How did his boss respond when he made that

14 request?

15     A.  He let him go.

16     Q.  Okay.  Were there any other incidents where Alex

17 had either a delusion or thought he heard voices or

18 anything of that nature?

19     A.  Not that I am aware of.

20     Q.  Was Alex prescribed medications?

21     A.  Yes, he was.

22     Q.  What medications was he prescribed?

23     A.  I don't know the names.

24     Q.  Do you know what the purpose was of those meds?

25     A.  It was for schizophrenia.

1       A.   A Smith & Wesson .38.

2       Q.   And how long did you have that gun?

3       A.   I bought it when I lived on Elm Way.

4            So 2014 maybe.

5       Q.   Why did you buy the gun?

6       A.   Well, being a single person.

7       Q.   For protection?

8       A.   Well, to me, I feel safe.  If somebody came in the

9  house, I could protect myself.

10      Q.   Did Alex know that you had the gun?

11      A.   He saw it once.  And it upset him.

12      Q.   Did he say why it upset him?

13      A.   He said, Why do we have a gun?  And he went out

14  for a cigarette.  And I removed the bullets, put them in

15  my purse.  And when he came back in I said, Alex, this is

16  just a pellet gun.  Don't worry.  He never saw it again.

17  He never, ever touched it.  He never, never.

18      Q.   And I just wanted to remind you, Ms. Duncan, to

19  try and not get too close to the computer.  I know you're

20  trying to hear me, but it's cutting you off.  So, I don't

21  know, maybe you can turn the volume up.  I'm trying to

22  talk slowly too to help you hear better.

23      A.   You're fine.

24           MR. LOBSENZ:  I was going to ask if we could

25  experiment with the volume or something.

 1  you had interacted with Alex, do you recall that?

 2      A.  Well, he was asleep when I'd go to work; so I

 3  would have seen him on my birthday.  I would come home,

 4  call and say, Want a coffee.  You want -- you know, what

 5  would you like for dinner, just stuff like that, just mom

 6  stuff.

 7      Q.  Okay.  So is it safe to say you don't have a

 8  specific recollection of your prior interaction with Alex?

 9      A.  I don't even know what I did on my birthday the

10  day before.  I can't remember.  That was March 20th.

11      Q.  Did Alex get you a present for your birthday?

12      A.  He didn't have any money.

13      Q.  So is that a no, he didn't get you a present?

14      A.  No.

15      Q.  Did he get you a card?

16      A.  No.

17      Q.  Did you do anything with Alex for your birthday?

18      A.  I said I don't even remember what I did on my

19  birthday.  It was five years ago.  And I had to work that

20  day, and I had to work the next day.

21      Q.  Do you recall before the incident the last time

22  that you and Alex had gotten in an argument?

23      A.  We didn't argue.

24      Q.  Was Alex into anything online?

25      A.  Yeah, he talked to girls and stuff online, and

1   pictures and junk like that.

2        Q.  What girls did he talk to?

3        A.  Just not the kind you want to take home to mom.

4            Just girls, you know.

5        Q.  On what kind of websites?

6        A.  I don't know.

7        Q.  How do you know he did that?

8        A.  I think accidentally I saw something on his phone

9   once.

10       Q.  And what did you see?

11           MR. LOBSENZ:  Okay.  Go ahead and answer that, and

12  then --

13           THE WITNESS:  -- pictures --

14           MR. LOBSENZ:  Wait one second, please.  Go ahead

15  and answer that.  But first when you're done I'm going to

16  make an objection.  Go ahead and answer.

17           THE WITNESS:  Just girly pictures, and girls would

18  call and text and stuff.  And it's the people online that

19  just, you know, they're not really your friends.  It's

20  just -- I don't know what they would get out of it.

21           He doesn't have any money.

22               (Reporter clarification.)

23       A.  It's not like they're after money.

24           MR. LOBSENZ:  Are you done with your answer?

25           THE WITNESS:  Yeah.

Page 123

1    MR. LOBSENZ:  I want to state for the record that
2  it's my understanding that the County is defending a
3  Monell claim and a negligent retention claim.
4                    (Reporter clarification.)
5    MR. LOBSENZ:  And to be asking questions about
6  what kind of girls he might have talked to seems not only
7  not relevant but beyond the pale of anything that could
8  possibly lead to anything relevant.
9             And you may continue to question about it.
10 But it seems to be so far afield as to be not any purpose
11 for asking Ms. Duncan these questions anymore.
12   Q.  BY MR. GROSS:  Do you know if he was spending any
13 money on these interactions with girls online?
14   A.  He didn't have money to spend.
15             He got $30.00 a day.
16   Q.  Were you -- did you have access to his card
17 statements?
18   A.  We could see where he spent his money, yes.
19   Q.  Okay.  And did you ever see him spend money on
20 things online?
21   A.  No.
22   Q.  Was he -- did he have, besides the girls you're
23 referring to, did he have online friends?
24   A.  If you don't meet them, I don't know how they can
25 be friends.  But just girls were contacting him, and he'd

# APPENDIX E

1           UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON AT SEATTLE
2    _____

3    JENNIFER DOLD, personal     )
     representative of the       )
4    estate of Alexander Dold;   )
     and KATHY DUNCAN, mother    )
5    of Alexander Dold,          )
                                 )
6                 Plaintiffs,    )
                                 )
7        vs.                     )   NO. 2:20-cv-00383-RAJ
                                 )
8    SNOHOMISH COUNTY, a         )
     political subdivision of    )
9    the State of Washington;    )
     BRYSON McGEE; and CODY      )
10   McCOY,                      )
                                 )
11                Defendants.    )
12   _____

13      Video-Recorded Deposition Upon Oral Examination

14                          of

15                    JENNIFER DOLD

16   _____

17

18                    Taken Via Zoom

19

20

21

22

23

24   DATE:  February 2, 2022

25   REPORTED BY:  Lori K. Haworth, RPR
                   License No.:  2958

1    watching him for days.  So.  Just things like that, I

2    mean, that logically don't make sense to the rest of us,

3    and we can rationalize and understand that that's not

4    the case.  But yeah, he definitely had some paranoia and

5    delusions.

6         Q.   There is some indication in the medical records

7    that Alex at times thought that there were serial

8    killers living in the woods around your mom's house.

9    Did you ever experience those paranoid incidents with

10   him?

11        A.   He did tell me that.

12        Q.   There is also an indication in the records that

13   Alex would sleep with weapons, due to his worries about

14   people coming in and trying to harm him.  Did you ever

15   experience that with Alex?

16        A.   I don't think "sleep with weapons" is the right

17   word.  I mean, I have a gun next to my bed for my

18   safety.  He was afraid of guns.  So I believe he did

19   have a golf club or a bat at some points when he was

20   feeling unsafe.  And he never used those in the entire

21   time from '06 to when he died.  It was just a safety

22   net, like we all have, knowing that if someone broke in

23   or if something happened, we could protect ourselves,

24   so.  But yes, he did.

25        Q.   I think Kathy mentioned something about a

1   can't remember her name.

2       Q.   So Jen, we talked about some interactions that

3   Alex had with the police.  One that we didn't talk about

4   was, apparently Alex was -- soon after a friend was

5   involved in a deadly application of force with law

6   enforcement, Alex actually arrived at his house.  And

7   that was back in the 2011 time frame, if I remember

8   correctly.  Does that sound about right?

9       A.   **That sounds right.**

10      Q.   So Alex didn't have any personal interaction

11  with police that day.  But he did have some personal

12  interaction with police after the broken car window

13  incident that you described earlier with his friend; is

14  that right?

15      A.   **Yes.**

16      Q.   And was he actually arrested on that occasion

17  or was he simply brought back to -- brought home by the

18  law enforcement officers?

19      A.   **No, he was taken in.**

20      Q.   And we talked about the altercation with Frank.

21  But your recollection is, the police didn't actually

22  have contact with him that night; is that correct?

23      A.   **No.  Yeah, there was no contact.  There was a**

24  **court date.  And my cousin didn't go.  So it was thrown**

25  **out, I believe.  I don't know the technical term.**